Lawrence A. COWAN, Appellant,

v.

UNITED STATES, Appellee.

No. 7068.

District of Columbia Court of Appeals.

Argued Jan. 17, 1974.

Decided Jan. 20, 1975.

Rehearing Denied Feb. 20, 1975.

13. *See* n. 5 *supra.*

------

Eugene Gressman, Washington, D.C., appointed by the court, with whom Joel M. Birken, Washington, D.C., was on the brief, for appellant.

Garey G. Stark, Asst. U.S. Atty. with whom Harold H. Titus, Jr., U.S. Atty., at the time the brief was filed, John A. Terry and John F. Finnegan, Jr., Asst. U.S. Attys., were on the brief, for appellee.

Before KELLY, FICKLING and PAIR *, Associate Judges.

KELLY, Associate Judge:

The allegations of error raised on this appeal from a conviction of bribery (D.C. Code 1973, § 22–701) concern the admission at trial of impeachment evidence obtained through what the trial court considered to be an illegal search and seizure and from certain of appellant's statements to an employee of the District of Columbia Bail Agency. We affirm.

On a day in May of 1972 appellant was arrested by Officer Terry A. Womack for driving without an operator's permit and taken to the precinct to post collateral. As appellant entered the station house he was seen to toss aside several tinfoil packets which were confiscated and later found to contain cocaine. Appellant was thereupon charged with the illegal possession of narcotics (D.C.Code 1973, § 33–402).

Officer Womack testified at trial that appellant offered to give him all of his money (about $200) if the officer would forget about the narcotics arrest. The money was not accepted by Womack who, without alerting appellant, informed his superior of the offer. Following instructions, Officer Womack and Steven R. Cooley, who had also observed appellant's attempt to dispose of the contraband, arranged for appellant to deliver $1,000 to them that afternoon. Appellant returned to the precinct later in the day with a partial payment of $500 and agreed to bring the rest of the money later. Two days thereafter, moments before his arraignment in Superior Court on the charge of narcotics possession, appellant gave Officer Womack an additional $500. He was placed under arrest for bribery.

Appellant admitted that he had given money to Officer Womack on two occasions, but stated that his purpose in doing so was to expose the officer as an extortionist. He also claimed that the officer had demanded money from him on ten or twelve other occasions. Womack testified in rebuttal that, while he had known appellant for about a year, he had never asked him for money.

The court had granted appellant's pretrial motion to suppress the tinfoil packets of cocaine because, in its opinion, their recovery resulted from an illegal search and seizure. As a consequence, the trial judge was careful to guard against any mention by the government of the illegal seizure of narcotics. The prosecutor was only permitted to refer to the incident as a misdemeanor charge filed against appellant as a result of events which took place at the precinct after the traffic arrest. When appellant took the stand, however, the government impeached his credibility with three prior criminal convictions. Then, on redirect examination the following colloquy occurred:

Defense Counsel: Mr. Cowan, [the prosecutor] asked you about a conviction in 1963, one for the Harrison Narcotic Act in 1959, and one for shoplifting in

1965. During that period of time, sir, did you have some type of sickness?

The Witness: Yes, sir.

\* \* \* \* \* \*

By Defense Counsel:

Q. Tell the Court and the members of the jury what your problem was.

A. I was an addict. When I came out in '65, I was determined then, and I have been clean, and I have been on the program. I have been on it ever since.

Q. Have you improved yourself since then?

A. One hundred percent.

Q. Have you had any convictions since 1965?

A. No, sir, I haven't.

On recross-examination the prosecutor questioned appellant about his present use of narcotics [1] and the trial judge subsequently allowed the admission of evidence of the seizure of the cocaine at the time of appellant's arrest in the form of testimony from Officer Cooley that he retrieved five aluminum foil packages which appellant had thrown to the floor and which he suspected contained narcotic drugs.

The question on appeal is whether appellant's statements elicited on redirect examination permitted the admission of evidence, for purposes of impeachment, of the narcotics arrest at the precinct. In Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), the defendant's assertions on direct examination that he had never possessed narcotics were held to allow the introduction, for impeachment, of evidence of heroin unlawfully seized in connection with another proceeding. Here, appellant's assertions on redirect examination put in issue whether he had been and continued to be a narcotic addict, for the jury could easily have inferred from his testimony that he was no longer an addict and that he had not used narcotics since 1965.[2] Accordingly, while less precise than the *Walder* denials,[3] appellant's statements had the effect of a general denial of present narcotics use and under *Walder*, it was permissible for the government to contradict his testimony with what had been held to be tainted evidence.[4]

In United States v. Purin, 486 F.2d 1363, 1367 (2d Cir. 1973), cert. denied, 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974), a defendant charged with possessing and distributing cocaine testified that she had stopped using cocaine before her arrest. The court there held that the admission of two grams of illegally seized cocaine found on her person at the time of arrest was

---

1. Appellant testified that he went to the methadone clinic daily and was clean. When asked if he ever said that he had narcotic drugs in his possession during the month of May, appellant said he had not.

2. In the words of the trial judge: "This defendant has gone out of his way to say that —to explain his prior convictions and his own self interests by saying that he was an addict but he has kicked the habit now."

   \* \* \* \* \*

   "[H]e has taken the stand and he says—he is telling the jury, 'I'm different. I was convicted for these offenses back in the '60's and I'm not an addict any more.' "

3. Walder v. United States, *supra* at 63, 74 S.Ct. at 355. "Q: Now, first, Mr. Walder

. . . I want you [to] tell the Court and jury whether, not referring to these informers in this case, but whether you have ever sold any narcotics to anyone. A: I have never sold any narcotics to anyone in my life. Q: Have you ever had any narcotics in your possession, other than what may have been given to you by a physician for an ailment? A: No."

4. A denial of involvement with liquor for a period of two years was held sufficient to allow evidence of appellant's presence at a raid in which illegal whiskey was seized and of his indictment arising out of that raid. *See* United States v. Ambrose, 483 F.2d 742, 747–749 (6th Cir. 1973).

probative and relevant to her defense of nonuse. Similarly, evidence with respect to the recovery of narcotics in this case bore on the possible use of narcotics by appellant and gave the jury a basis on which to evaluate his claim that he was no longer an addict. Moreover, appellant was known to the arresting officer to be a narcotics addict and had testified at the suppression hearing a few weeks before trial that he was then addicted to narcotics. Equally applicable, therefore, is the rationale of Walder v. United States, *supra*, 347 U.S. at 65, 74 S.Ct. at 356, that:

> [T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility.[5]

We therefore hold that it was permissible to allow the impeachment evidence to be used against appellant on recross-examination.

■ Appellant also contends, despite a stipulation voluntarily made, that it was plain error to admit in evidence certain statements made to an employee of the District of Columbia Bail Agency concerning his place of employment. Appellant had testified that he was employed at Dean's Barber Shop at 7th and T Streets, N.W., and had been employed there for three years. He also claimed that he had told a Bail Agency representative that he was employed at a different barbershop. Robert A. Dean, owner of Dean's Barber Shop, testified in rebuttal that appellant had never been employed there. The prosecutor thereafter read in evidence a stipulation he had made with defense counsel; namely,

> [S]hould the Government call in its rebuttal case a Mr. Timothy J. Murray, a representative of the District of Colum-

bia Bail Agency, his testimony would show that on the date of May 9, 1972, Mr. Cowan reported to him, Mr. Murray, that his present employment was at Dean's Barber Shop, 1845 7th Street, Northwest, in the District of Columbia. He had worked there as a barber for two years.

In addition, counsel have reached a stipulation with regard to the testimony of Officer Steven Cooley. Should Officer Cooley be recalled in the rebuttal case, his testimony would be that on May the 7th, 1972, Mr. Lawrence Cowan informed Officer Cooley that at the present time he had worked at Dean's Barber Shop for a period of seven years. [Tr. 318–19.]

Appellant's contention is that D.C.Code 1973, § 23–1303(d), precludes the use of any information given the Bail Agency for purposes of impeachment at trial.[6] That section provides:

> Any information contained in the agency's files, presented in its report, or divulged during the course of any hearing shall not be admissible on the issue of guilt in any judicial proceeding, but such information may be used in proceedings under sections 23–1327 [failure to appear], 23–1328 [offenses committed during release], and 23–1329 [violation of release conditions], in perjury proceedings, and for the purposes of impeachment *in any subsequent proceeding*. [Emphasis supplied.]

■ Whether the phrase "in any subsequent proceeding" is to be interpreted to mean a proceeding arising out of a new or different offense or indictment, as appellant argues, or to mean any proceeding arising after the information is gathered by the Bail Agency and reported to the court, as the government contends, the vol-

---

5. *See also* Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). *But see* People v. Taylor, 8 Cal.3d 174, 104 Cal.Rptr. 350, 501 P.2d 918 (1972), cert. denied, 414 U.S. 863, 94 S.Ct. 35, 38 L.Ed.2d 83 (1973).

6. Appellant does not object to the impeachment testimony of Officer Cooley or Mr. Dean.

untary stipulation to the impeachment evidence precludes appellant from raising the point on appeal.[7] Valid stipulations as to evidence are binding on the parties thereto as well as on the courts. Waltemeyer v. Autocar Sales & Service Co., D.C.Mun. App., 103 A.2d 921 (1954).[8]

Affirmed.

---

7. The trial judge barred the use of information on the Bail Agency report concerning appellant's status as an addict and the results of a urinalysis.

8. *See also* Pitts v. United States, D.C.Mun. App., 95 A.2d 588 (1953); Johnson v. Hawkins, D.C.Mun.App., 81 A.2d 467 (1951); 83 C.J.S. Stipulations § 17 (1953).