Alvin I. BYRD, Appellant,

v.

UNITED STATES, Appellee.

No. 83–545.

District of Columbia Court of Appeals.

Submitted Sept. 5, 1984.

Decided Dec. 14, 1984.

Bernard Jay Williams, Washington, D.C., appointed by this court, for appellant.

Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr., Steven Tabackman, and Sharon M. Collins, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEWMAN and BELSON, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

This is an appeal from a conviction of two counts of petit larceny (D.C. Code § 22–2202 (1981)), two counts of destruction of property (*id.* § 22–403), and one count of burglary in the second degree (*id.* § 22–1801(b)). Appellant's major contention is that the trial court erred in denying

his motion to withdraw a stipulation which he and his counsel had previously presented to the court. He also assigns as error the court's refusal to grant a mistrial based on asserted destruction of evidence by the government. We affirm.

The testimony presented by the government may be summarized as follows:

One summer morning in a residential neighborhood, appellant dropped in at the home of another young man—James Jackson (described as a boyhood friend) and suggested that they both go out and make some money by stealing. Jackson agreed. They walked to a nearby parking lot. Perceiving some items of electronic equipment, including tapes and a radar detector in an unoccupied car, they smashed a side window and removed those objects.

The man who had parked the car, Richard Kuehl, came back to it a few hours later, found that one of its windows was broken and that some personal property he had left inside the car was missing. He reported the matter to the police.

In the meantime, appellant and his accomplice, after selling some of the stolen articles, repaired to Jackson's house for a beer. Appellant eventually departed, broke into a house owned by a Mrs. Keane about two blocks away from Jackson's dwelling; carried away a television set, returned to Jackson and told him what he had done. Leaving the television set in Jackson's house, both men then went to the Keane residence, which appellant reentered, bringing Jackson in with him. They took a stereo amplifier and cassette player from the Keane house, and retraced their steps to Jackson's place, passing a house on an intersecting street from which two young women sitting on the porch saw them carrying certain objects toward the Jackson house. One of the women recognized Jackson as a neighbor.

When Mrs. Keane returned from work, she noticed that one of the glass panels in the side door was shattered and that her television set and other possessions were missing. Police were summoned to the Keane house. Seeing the police arrive, the two young women left the porch and told the officers what they had observed. The policemen then called at the Jackson house, where they were admitted by a brother of Jackson, who had just come back from work. With his permission, the officers searched the premises and immediately discovered the television set and other property stolen from the Keane house. They also found a tape container—later identified as one of the items taken from the Kuehl car. Appellant and Jackson, who had gone to a playground in the neighborhood, were arrested early that evening.

At the trial, the principal witnesses called by the government were Mrs. Keane, the young women who had been on the veranda the afternoon the Keane house was entered, and Jackson, who took the stand to confess his participation in the thefts and burglary. He gave the jury a detailed account of his conduct and that of appellant during the day these events had occurred.

Kuehl, the complainant concerning the damage to the car and the theft of its contents, did not take the stand, as defense counsel had informed the prosecutor after the first day of the trial that he and his client were willing to stipulate as to the admission of the testimony the government was prepared to elicit from him. Both counsel and appellant signed a written stipulation drafted by the government which was read to the judge—the jury having been temporarily excused—on the second day of trial.

■ In essence, all that the document stated was that if Kuehl were called as a witness, he would testify that when he left the car in the parking lot, its windows were intact, but when he returned at 1:00 p.m. that day, one window was broken, certain specified articles belonging to him were missing, and that he later recognized a tape

container recovered by police in the Jackson house as one of those stolen articles.[1]

It was the subsequent admission of this stipulation into evidence over the objection of defense counsel which is challenged on appeal. After a luncheon recess the following day, the prosecutor, before the jury was reconvened, reported to the court that defense counsel had gone into the cell block where Jackson was detained and attempted to intimidate him from testifying against appellant. Counsel retorted that this accusation was false and asked the court to hear testimony from other occupants of the cell block. When the court declined, admonishing both lawyers to focus on the trial issues, defense counsel, characterizing the prosecutor's conduct as "alien to [any] concept of cooperating" with the United States Attorney, asked permission to withdraw the stipulation. Stating that a signed stipulation was ordinarily regarded as a contract, the court inquired as to the grounds for rescinding it. Counsel stated that as the stipulation had not as yet been submitted to the jury, he was free to withdraw it, but that in any event, he had good reasons to think that some of the witnesses he expected to produce would refute the facts of the stipulation.

The government objected on the ground that it had notified the witness, Kuehl, who was the subject of the stipulation, that he need not appear at the trial and that at this late date it would be difficult to bring him to court, as he lived in Baltimore and worked in Pennsylvania. The court reserved ruling. On the following day, appellant's counsel conceded that he had not yet interviewed any prospective witnesses, but submitted a motion to strike or rescind the stipulation. After hearing arguments by both sides, the court denied the motion.

Later in the trial, when the stipulation was admitted and read, the court pointed out that the stipulation went merely to admissibility, not the truth of the matters stated therein.

In our opinion, the ruling of the court was correct. It conforms to the well established principle that stipulations fairly entered into are controlling and courts are bound to enforce them. *Osborne v. United States*, 351 F.2d 111, 120 (8th Cir.1965).[2] Our court has enforced stipulations of the parties which went so far as to provide final settlement and disposition of their controversy. *Waltemeyer v. Auto Car Sales & Service Co.*, 103 A.2d 921, 922 (D.C.1954).[3] We relied on this decision in holding that a stipulation on what a prospective witness would say—the kind of stipulation entered into by appellant here— was properly admitted. *Cowan v. United States*, 331 A.2d 323, 326–27 (D.C.1975).

The *Cowan* holding, however, did not deal with the precise issue which appellant raises, *viz.*, the asserted right of a party to a stipulation to abrogate it before it has been actually received in evidence. There is a dearth of judicial authority in this jurisdiction on this matter, probably because very few trial lawyers fail to honor commitments made in open court with opposing counsel.

Appellant argues that because his motion to rescind was made before the stipulation was received into evidence, the denial of such motion was error. The weight of authority, however, rejects this proposition. As one federal appellate court put it, "Stipulations of attorneys made during a trial cannot be disregarded or set aside at will."

1. When this document was presented to the judge, defense counsel and his client said they were ready to sign it, provided the word "taken" would be substituted for the word "stolen" in describing the missing container. The prosecutor agreed. When the stipulation was ultimately read to the jury, the text did not reflect this minor change in phraseology. Contrary to appellant's contention, this did not constitute prejudicial error for the exhibit submitted to the jury for examination in its deliberations contained the amendment agreed upon.

2. *See also H. Hackfield & Company v. United States*, 197 U.S. 442, 446, 25 S.Ct. 456, 457, 49 L.Ed. 826 (1905), cited in 83 C.J.S. *Stipulations* § 17 (1953).

3. The court deemed *Laughlin v. Berens*, 73 App. D.C. 136, 118 F.2d 193 (1940) distinguishable.

*Lyles v. American Hoist & Derrick Co.,* 614 F.2d 691, 694 (10th Cir.1980).

It is true that trial courts do have discretion to relieve a party from a stipulation where such action is intended to prevent manifest injustice. *United States v. Montgomery,* 620 F.2d 753, 757 (10th Cir. 1980); *United States v. McGregor,* 529 F.2d 928, 931 (9th Cir.1976). In *Montgomery, supra,* the trial court had set aside stipulations of fact, as evidence at trial demonstrated that one of the parties had been inadvertent in stipulating. In *United States v. Kulp,* 365 F.Supp. 747, 763 (E.D. Pa.1973), *aff'd,* 497 F.2d 921 (3d Cir.1974), the court in denying a motion to withdraw a stipulation, observed that such motions should be granted only if the movant could "prove that he relied to his detriment on representations that were untrue, or that the stipulation stemmed from fraud, accident, mistake, inadvertence, surprise, or excusable neglect ..." We regard this observation as an accurate analysis of the leading cases on this point. *See* 83 C.J.S. *Stipulations* § 30 (1953).

None of the circumstances justifying relief from a stipulation are present in the instant case. Appellant, in attempting to bring his case within some of the exceptions to the rule respecting the binding effect of stipulations, contends that as the stipulation was made for his benefit, its abrogation would not have been detrimental to the government—thus ignoring the possibility, and indeed likelihood, that the government would be unable to produce one key witness before resting its case. He also argues that the ruling of the court prevented him from offering witnesses (none of whom were ever named) to refute the purported testimony of Kuehl, the absent witness. There is no basis for this contention, as the court made clear that the stipulation was admitted to show what the testimony would be—not for the truth of the facts stated. Thus the defense was not foreclosed from calling witnesses in contradiction.

The second ground urged for reversal lacks any record support. Appellant asserts that the government "destroyed evidence" when it removed photographs which had been taped onto a diagram during the government's case. But appellant did not object before the exhibit was dismantled nor did he insist that the photographs be preserved in the position they were on the diagram. In fact, the removal of the pictures was in response to defense counsel's request that the diagram be redrawn so that the next witness could not see the notations placed on the original by the prior witness. Appellant having taken an inconsistent stand and having untimely objected to the pictures' removal, the trial judge was well within his discretion to deny the motion for mistrial. *Beale v. United States,* 465 A.2d 796, 799 (D.C.1983), *cert. denied,* 104 S.Ct. 1293, 79 L.Ed.2d 694 (1984).

*Affirmed.*