**Herbert David BROOKS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 09–CM–278.**

District of Columbia Court of Appeals.

Submitted April 15, 2010.

Decided April 29, 2010.

---

————

David H. Stringer, appointed by the court, for appellant.

Channing D. Phillips, Acting United States Attorney at the time the brief was filed, and Roy W. McLeese III, Elizabeth Trosman, and Seth Adam Meinero, Assistant United States Attorneys, for appellee.

Before FISHER, Associate Judge, and KERN and KING, Senior Judges.

FISHER, Associate Judge:

Appellant challenges his conviction, after a bench trial, for possession of heroin, arguing that the trial court committed reversible error when it denied his mid-trial request to withdraw his express waiver of the right to confront a government chemist. Finding no abuse of discretion, we affirm.

## I. Statement of Facts

On August 12, 2008, appellant was approached by Officer David Wildey of the Metropolitan Police Department, who, after searching the right pocket of appellant's cargo shorts, found two small zip-lock bags, each containing a tan powder substance.[1] After placing the appellant in handcuffs, Officer Wildey handed the two zip-locks to his partner, Officer Sarah Hoffman, who placed them into a heat seal, the PD–95. Appellant's name and the place from which the zip-locks were recovered (appellant's right-leg cargo pocket) were written on the PD–95. Officer Hoffman field tested one of the bags, which tested positive for opiates, but she could not recall whether she did that on the

scene or at the station. Appellant was subsequently charged with, and convicted of, possessing heroin, in violation of D.C.Code § 48–904.01(d) (2001).

On the day before trial, appellant explicitly waived his right to hear testimony from the DEA chemist who analyzed the substance found in the zip-locks. Addressing appellant personally, the court asked, "[Your attorney] indicated that you no longer want the chemist to testify, is that true?" Appellant replied, "Yes, sir." The next morning, before trial began, the court mentioned, without contradiction, that the defendant had "agreed to waive ... the chemist...."

The DEA lab number on the heat seal envelope was LV–375. During cross-examination, Officer Hoffman testified that, because of a "slight drag of the pen," the lab number on one of the zip-lock bags inside the heat seal looked as though it might read LV–325, instead of LV–375. She also testified that the letters written on one of the zip-lock bags "actually look[ed] like LU" and that the number "look[ed] like 325." She had not written the lab number and assumed someone at the DEA had done so.

Shortly thereafter, appellant sought to withdraw his waiver of the DEA chemist's testimony. He argued that, because he had not seen the heat seal before waiving the chemist's appearance, he could not have known of the possible inconsistency between the lab numbers. Appellant argued that the chemist's testimony now was necessary to "explain the difference between the 325 and 375." The trial judge denied the request, explaining that "[t]here's no doubt that these are the same drugs...."

---

1. The court denied appellant's motion to suppress the evidence, concluding that he had consented to the search. Appellant does not challenge that ruling on appeal.

## II. Standard of Review

■ Neither party cites, and we have not found, any case law specifically addressing the standard of review we should apply to the denial of appellant's mid-trial request to withdraw his waiver of the right to confront a government chemist. Nevertheless, as the government has pointed out, this court reviews comparable rulings—denials of mid-trial requests to withdraw a stipulation, denials of motions to withdraw a guilty plea, and denials of motions to withdraw a waiver of the right to a jury trial—under the abuse of discretion standard. *See Byrd v. United States,* 485 A.2d 947, 949–50 (D.C.1984) (stipulation that witness would have testified in a certain fashion; "It is true that trial courts do have discretion to relieve a party from a stipulation where such action is intended to prevent manifest injustice."); *Gooding v. United States,* 529 A.2d 301, 306 (D.C. 1987) (motions to withdraw guilty pleas "are addressed to the sound discretion of the trial court"); *Sparks v. United States,* 358 A.2d 307, 311 (D.C.1976) (waiver of the right to a jury trial; "[T]his court will reverse a lower court's determination to either allow or disallow withdrawal of consent only if there is an abuse of this discretion.").

An attempt to withdraw a stipulation provides an especially apt analogy since this court has stated that an express waiver of the right to confront a DEA chemist "may ... take the form of a stipulation by the defendant as to the contents of the chemist's report." *Thomas v. United States,* 914 A.2d 1, 19 (D.C.2006). In addition, because the right to contest a factual matter, the right to a trial at which one's guilt must be proven, and the right to trial by jury are no less important than the right to confront a government witness, it is appropriate to apply similar analysis to

an attempt to withdraw a waiver of the right at issue here.

■ "Discretion signifies choice." *(James) Johnson v. United States,* 398 A.2d 354, 361 (D.C.1979). Moreover, "[t]he concept of 'exercise of discretion' is a review-restraining one"; our "role ... is supervisory in nature and deferential in attitude." *Id.* at 362 (internal citations omitted). Consequently, we do "not render [our] own decision of what judgment is most wise under the circumstances presented," but instead recognize that "the decision-maker exercising discretion has the ability to choose from a range of permissible conclusions." *Id.* at 361–62. Nevertheless, "[a]n informed choice among the alternatives requires that the trial court's determination be based upon and drawn from a firm factual foundation." *Id.* at 364. In addition, when "reviewing the decision for an abuse of discretion [we] must determine whether the decision maker failed to consider a relevant factor, whether he relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *Id.* at 365 (internal quotation marks and citation omitted). Finally, if we find error in exercising discretion, we must consider the issue of prejudice. *Id.* at 367. Only when "the impact of that error requires reversal" will "we hold that the trial court 'abused' its discretion." *Id.*

## III. Legal Principles

■ "The Sixth Amendment to the United States Constitution ... provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.'" *Melendez–Diaz v. Massachusetts,* —— U.S. ——, 129 S.Ct. 2527, 2531, 174 L.Ed.2d 314 (2009) (internal citation omitted). This right applies to any out-of-court statement that is testimonial in nature. *Crawford v.*

*Washington,* 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Davis v. Washington,* 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (noting that only "testimonial statements" cause the declarant to be a "witness" within the meaning of the Confrontation Clause). This court and the Supreme Court have concluded that a chemist's report is testimonial and therefore subject to the requirements of the Confrontation Clause; however, the government may introduce the report without calling the chemist to testify so long as there is a valid (usually express) waiver by the defendant. *Thomas,* 914 A.2d at 5, 12, 19; *see Melendez–Diaz,* 129 S.Ct. at 2534 n. 3 (noting that the right to confront government witnesses may be waived).

■ Nevertheless, the Supreme Court did "not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody ... must appear in person as part of the prosecution's case.... [G]aps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." *Melendez–Diaz,* 129 S.Ct. at 2532 n. 1 (internal quotation marks and citations omitted); *accord, In re D.S.,* 747 A.2d 1182, 1187 (D.C.2000). We recognize that "[t]he trial court has broad discretion in determining the admissibility of physical evidence." *Gilmore v. United States,* 742 A.2d 862, 871 (D.C.1999) (citing *Ford v. United States,* 396 A.2d 191, 194 (D.C.

1978)). In addition, "when physical evidence is in the hands of government, the presumption arises that it has been handled properly." *In re D.S.,* 747 A.2d at 1187 (citing *Ford,* 396 A.2d at 194–95).

## IV. Analysis

■ In this case, there is no dispute that the government obtained a valid waiver of the chemist's testimony prior to trial.[2] Rather, the issue is whether appellant should have been allowed to withdraw his waiver in the middle of trial. Appellant asserts that "the apparent discrepancy in the lab numbers ... raised a legitimate question about the chain of custody and whether the substance seized from the defendant was the same substance analyzed by the DEA chemist and offered as evidence at trial." Importantly, appellant did not challenge the accuracy of the chemist's analysis. Instead, he wanted to "resolve any issues relating to chain of custody"—related, in other words, to the relevance and admissibility of the physical evidence.[3]

When discussing a defendant's waiver of his right to confront a government witness, this court has remarked that "a defendant would not be precluded from changing his mind, so long as the prosecution is not prejudiced by having relied on the defendant's election to its detriment." *Thomas,* 914 A.2d at 19 n. 24. This brief statement, whether dictum or not, certainly does not mean that a defendant is automatically entitled to withdraw his waiver. That de-

2. Appellant acknowledges that "[i]t is clear from the record that the defendant and his attorney waived the chemist's testimony at the beginning of the trial."

3. Events occurring immediately after the court's ruling enforcing the waiver confirmed that appellant was attempting to challenge the chain of custody of the evidence, not the accuracy of the chemical analysis. In this case the trial and motion hearing occurred simultaneously. After the government rested, ap-

pellant testified "on the motion," readily admitting that he had two zip-locks of heroin in his pocket. Indeed, he asserted that this fact made it unlikely that he would have consented to a search, as Officer Wildey had testified. Although Judge Cushenberry did not consider this admission when determining whether the government had proven appellant's guilt, it confirms that appellant was not challenging the accuracy of the chemical analysis.

cision is committed to the sound discretion of the trial court.

 Whether his choice is characterized as a waiver or a stipulation, appellant expressly agreed to forgo the testimony of the DEA chemist. Courts generally recognize that "stipulations fairly entered into are controlling...." *Byrd*, 485 A.2d at 949 (citing *Osborne v. United States*, 351 F.2d 111, 120 (8th Cir.1965)). Here, although appellant sought to withdraw his waiver/stipulation, there is no claim that appellant "relied to his detriment on representations that were untrue, or that the stipulation stemmed from fraud, accident, mistake, inadvertence, surprise, or excusable neglect...." *Id.* at 950 (citation omitted).

 Nevertheless, "trial courts do have discretion to relieve a party from a stipulation where such action is intended to prevent manifest injustice." *Byrd*, 485 A.2d at 950. When deciding whether to grant a request to withdraw a stipulation or waiver concerning the testimony of a government witness, a judge may take into account various factors, including the stage of the proceedings, the importance of the testimony, inconvenience to the court, and prejudice to the government.

This case is much like *Byrd*, where the defendant stipulated that a key government witness would give certain testimony if called to the stand. 485 A.2d at 948. Later, he sought to withdraw the stipulation before it was submitted to the jury. *Id.* at 949. Because the stipulation had been fairly entered into and the government likely would have been prejudiced because the out-of-town witness had been excused, this court affirmed the trial

court's denial of the defendant's request. *Id.* at 950. Although the court in *Byrd* did not mention the Confrontation Clause, the defendant in that case initially chose to forgo his right to confront a government witness. Similarly here, appellant essentially stipulated that the DEA chemist's report could be admitted, and his later effort to withdraw the stipulation should be governed by a similar analysis.

The government was not obliged to call the chemist to lay a foundation for admitting the physical evidence. *See In re D.S.*, 747 A.2d at 1187 (a break in the chain of custody affects weight, not admissibility). Officers Wildey and Hoffman testified that they recovered two zip-locks containing tan colored substances from the appellant and placed them in a heat seal after affixing identifying marks and information. They also testified that they recognized the exhibit produced in court as the heat seal containing the zip-locks they recovered from appellant. Officer Hoffman recognized the mark she had placed on the zip-lock containing the substance she field tested. Thus, in determining whether to grant the appellant's request, the trial judge had a "firm factual foundation" for deeming the testimony of the DEA chemist unimportant to establishing the chain of custody of the heat seal and its contents.[4]

In addition, Judge Cushenberry was free to consider both inconvenience to the court and prejudice to the government when making his decision. Appellant baldly asserts that "a short recess of the trial to allow the attendance of the chemist would have been minimally disruptive," but he fails to provide any factual support for that proposition. He also seems to disregard the impact of unnecessary delay on a

---

4. On several occasions Judge Cushenberry affirmed his finding that the drugs produced in court were the same as those taken from appellant based upon the identifying information on the evidence and his conclusion through observation that there was no inconsistency in the lab numbers marked on the evidence.

crowded criminal docket. This combined bench trial and motion hearing was completed in a single morning, and it is almost certain that arranging for the chemist's testimony would have required that the trial be resumed on another day.[5]

Having considered all the evidence relating to chain of custody, Judge Cushenberry was convinced that the drugs produced in court were "the drugs that were seized from [appellant]," noting that all the DEA lab numbers on the exhibits look like "LV-375" and that "[a]ll the documentation demonstrates that [fact] beyond any doubt in my mind...." Recognizing that the trial judge has discretion to determine whether the government has met the requirements for establishing admissibility

and that he also was acting as the finder of fact in this non-jury trial, we readily conclude that Judge Cushenberry did not abuse his discretion when he refused to grant appellant's mid-trial request to withdraw his waiver of the right to require testimony from the DEA chemist.

## V. Conclusion

For the reasons stated, the judgment of the Superior Court is hereby affirmed.

---

5. In *Thomas*, we noted that, according to a "Notice of Compliance Pursuant to 48 D.C.Code § 905.06" served on the defendant in that case, DEA chemists are located at Largo, Maryland, and, after being subpoenaed and placed on call for a particular day, require two hours' notice to arrive in the courtroom. 914 A.2d at 6–7. Here, the chemist had not been placed on call, and he might well have been on leave or testifying in another matter. It is unlikely that he would have arrived in the courtroom within two hours of appellant's request that he be called to testify. Moreover, the court had other matters to attend to, and defense counsel was involved in another trial before another judge.