*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-FM-871

JEFFREY CRATER, APPELLANT,

v.

MARTHA OLIVER, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DRB-3364-09)

(Hon. Michael O'Keefe, Trial Judge)

(Argued January 9, 2019                                        Decided February 14, 2019)

*Edouard J.P. Bouquet*, with whom *Shuaa Tajammul*, was on the brief, for appellant.

Martha Oliver, *pro se*.

Before GLICKMAN, THOMPSON, and EASTERLY, *Associate Judges*.

THOMPSON, *Associate Judge*:    The parties in this case, Jeffrey Crater and Martha Oliver, were divorced in 2011, with the Superior Court merging into the divorce decree a Term Sheet negotiated by the parties.  In 2015, after Mr. Crater was involuntarily terminated from his job as a lobbyist, he moved in March of that year to modify the alimony amount ($5,000 per month) that the divorce decree

required him to pay Ms. Oliver in accordance with the Term Sheet.[1] *See Crater v. Oliver*, No. 16-FM-1256, Mem. Op. & J. at 2 (D.C. May 22, 2018) (the "May 2018 MOJ"). Ruling on the motion to modify and citing Mr. Crater's greatly reduced income beginning in 2015, the Superior Court ordered that Mr. Crater would be required to pay Ms. Oliver eleven percent of his gross income each year as alimony.[2] In a separate appeal resolved by the May 2018 MOJ, Mr. Crater successfully challenged the Superior Court's reliance solely on the eleven percent formula, which this court held failed to take into account "both parties' current circumstances . . . ."

In the instant appeal, Mr. Crater appeals from a July 26, 2017, judgment of the Superior Court, entered before the May 2018 MOJ was issued, in which the Superior Court applied the eleven percent formula to what the court determined to be Mr. Crater's 2016 gross income, to establish the amount of alimony Mr. Crater

---

[1] The Term Sheet states that "[t]he amount of alimony is non-modifiable except in the event [Mr. Crater] suffers an involuntary substantial and material change in circumstances[;] in that event the amount may be modifiable but the length of alimony shall not be subject to modification."

[2] The Superior Court reasoned that the $60,000 per year (12 months times $5,000 per month) that the Term Sheet specified Mr. Crater was to pay amounted to 10.88% of Mr. Crater's 2010 income of $551,260, a percentage the court rounded to 11%. The court determined that eleven percent of annual gross income was the appropriate amount of spousal support going forward.

was obligated to pay Ms. Oliver for 2016. There is no dispute that the Superior Court was required, pursuant to the May 2018 MOJ, to revisit its ruling on the amount of alimony; the Superior Court did so, and its modified ruling is the subject of a separate appeal now pending in this court in consolidated Appeal Nos. 17-FM-1426, 17-FM-1456, and 18-FM-0726. But the instant appeal requires us to address a narrow issue that is independent of the issues that must be decided in those consolidated appeals. Specifically, the question before us is whether, as Mr. Crater argues, the Superior Court abused its discretion in ruling, with respect to the gains Mr. Crater realized in 2016 from the exercise of stock options[3] granted to him by his (former) employer, that the gains must be included in calculating Mr. Crater's gross income for 2016 for purposes of determining the amount of spousal support he was required to pay for that year. For the following reasons, we conclude that the Superior Court did not abuse its discretion in that regard.

**I.**

---

[3] Our understanding, confirmed by counsel for Mr. Crater during oral argument, is that the parties' reference to gains from the "exercise of stock options" is shorthand for monies realized after Mr. Crater (1) exercised his option to purchase his (former) employer's stock at a fixed discounted price, and then (2) sold the stock for a profit. The amounts realized are reported on Schedule D of Mr. Crater's 2016 federal income tax return.

On May 1, 2017, and July 21, 2017, the Superior Court held hearings on the alimony issue. Following the July 21 hearing, the court issued its order that is the subject of this appeal, ruling that for purposes of alimony, Mr. Crater's 2016 gross income for alimony concerns was $317,545, an amount that the court found resulted in required alimony of $34,930 (11% of $317,545) for 2016. The court arrived at that amount by including in Mr. Crater's 2016 gross income approximately $63,000 Mr. Crater realized from exercise of his stock options.

"There are no fixed rules for determining . . . in what amount alimony should be awarded." *Leftwich v. Leftwich*, 442 A.2d 139, 142 (D.C. 1982). Rather, "[a] trial court has a considerable measure of discretion in determining the appropriate amount of alimony[,]" and "that determination will not be disturbed on appeal unless the court clearly abused its discretion." *Ford v. Castillo*, 98 A.3d 962, 965 (D.C. 2014) (quoting *Araya v. Keleta*, 65 A.3d 40, 48 (D.C. 2013)) (internal quotation marks omitted). In reviewing an alimony award (like any other judgment) for abuse of discretion, we "must determine whether the decision maker failed to consider a relevant factor, whether he relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *Johnson v. United States*, 398 A.2d 354, 365 (D.C. 1979) (internal quotation marks omitted).

Neither the divorce statute nor this court's case law has set firm parameters for what may be treated as income for purposes of alimony. Here, in exercising its discretion, the Superior Court was advised about and properly looked to a number of factors in arriving at its decision to treat Mr. Crater's gains from the exercise of stock options in 2016 as part of his gross income for that year.

First, the court looked to the District of Columbia Child Support Guideline, *See* D.C. Code § 16-916.01 (2012 Repl.). The parties agree that the Guideline provisions are a helpful reference.[4] Mr. Crater emphasizes that § 16-916.01 (d)(1)(P) includes "[c]apital gains from a real or personal property transaction" in "gross income" only "*if the capital gains represent a regular source of income*" (emphasis added). *See also Lasche v. Levin*, 977 A.2d 361, 370 (D.C. 2009) ("[I]n the case of investment capital, . . . payouts, if to be included in gross income, must be made on a regular basis so as to be the equivalent of income payouts."). However, the Guideline also declares that "[f]or the purposes of this section, the term "gross income" means income from *any source*, including," for example, severance pay, bonuses, lottery or gambling winnings that are received in a lump

---

[4] This is notwithstanding the fact that the parties' total income has exceeded the $240,000 that is the maximum income to which the Guideline applies. *See* D.C. Code § 16-916.01 (h).

sum, and prizes or awards. *See id.*, §§ 16-916.01 (d)(1)(C), (E), (U), and (V) (emphasis added); *see also, e.g.*, *Slaughter v. Slaughter*, 867 A.2d 976, 976 (D.C. 2005) (concluding that the trial court did not abuse its discretion in ruling that a portion of a settlement amount paid to the wife "should be included in [her] gross income for the purpose of calculating the parties' respective support obligations"). These examples, most of which typically are not regular sources of income, afforded the Superior Court a reasonable basis for concluding that it was not required to exclude from Mr. Crater's 2016 income his gains from his exercise of stock options in that year.

Moreover, the Superior Court had before it evidence that permitted it to infer that, for Mr. Crater, gains from the exercise of stock options *were* a regular source of income. The court took "judicial notice of all the evidence" it had heard in earlier proceedings in the matter, and recalled that Mr. Crater had exercised stock options in 2013 and 2014.[5] In addition, Ms. Oliver told the court that Mr. Crater had regularly "over the years" received stock options as part of his compensation from his (former) employer; that "every year[,] when [Mr. Crater] received three different types of stock," he received for each one a statement explaining that he

---

[5] The court had also, in an earlier ruling, referred in its findings to Mr. Crater's "periodic ability to dispose of non-monetary income[.]"

would "recognize income upon the exercise . . . in accordance with the tax laws of the [relevant] jurisdiction"; that Mr. Crater's (former) employer considered the stock options income and issued W-2 earnings statements reflecting that income; that Mr. Crater once rejected the offer of a salaried job "because it didn't have stock options"; that Mr. Crater did not make "a onetime sale of stock" in 2016 but (having exercised no stock options in 2015, the year he sought a reduction in alimony)[6] "started selling on the first business day of 2016," and sold stock "on multiple occasions."[7]  Ms. Oliver also told the court that if the gain from Mr. Crater's exercise of stock options in 2016 was not to be treated as income, the court and the parties would have to "go back and start at . . . the very beginning[,] because [Mr. Crater] certainly considered [gain from the exercise of stock options] when he was talking about the point from which [his earlier] income fell."  The

---

[6]  Through this testimony, Ms. Oliver appears to have suggested that Mr. Crater carefully managed his stock options, which had an accelerated vesting date, in order to reduce his 2016 alimony obligation.  *Cf. Wooters v. Wooters*, 911 N.E.2d 234, 238 (Mass. App. Ct. 2009), *further appellate review denied*, 916 N.E.2d 767 (Mass. 2009) ("[I]f the exercised stock options were not deemed income for alimony purposes, a person could potentially avoid his or her obligations merely by choosing to be compensated in stock options instead of by a salary.").

[7]  We think it is appropriate to treat Ms. Oliver's statements during the proceedings on May 1 and July 21, 2017, as evidence because the court swore in both parties at the outset of the hearings.  While Mr. Crater's counsel was the only person who spoke on Mr. Crater's behalf, Ms. Oliver was *pro se*.

foregoing evidence gave the court a further reasonable basis for including in Mr. Crater's 2016 gross income the gains he realized from the exercise of stock options. *See Butts v. Butts*, 192 A.2d 294, 295 (D.C. 1963) ("[I]t is only necessary that [an alimony] award have a reasonable basis in the evidence.").

Mr. Crater notes that "[t]he brokerage account containing the stock options . . . was specifically assigned to [him] during the parties' divorce pursuant to the Term Sheet[,]" and argues that the Superior Court abused its discretion by requiring him to "exhaust assets awarded to him[.]" This argument is unavailing for at least two reasons. First, Mr. Crater's counsel told the court that he could not "state to a certainty what year in particular . . . the stock options that were exercised in 2016 represented." Given that Mr. Crater has not shown or even represented that the stock options involved here were awarded to him at the time of the divorce rather than in a later year or years, we see no basis for concluding that the Superior Court abused its discretion in calculating Mr. Crater's 2016 income. *Cf. Lasche*, 977 A.2d at 373 ("Given Lasche's statements that he could not 'speak with specifics about where the losses come from' . . . , the trial court did not abuse its discretion in refusing to deduct investment losses of Lasche's online business venture."); *Seither v. Seither*, 779 So. 2d 331, 333-34 (Fla. Dist. Ct. App. 1999) ("[I]t would be impossible to hold that the trial court erred in treating [the stock

options] as income" where "Mr. Seither failed to present any evidence challenging the testimony of the accountant.").

Second, with respect to Mr. Crater's argument that "a court may not force a paying spouse to liquidate assets . . . in order to make a maintenance payment," the short answer is that the Superior Court did not require Mr. Crater to exercise his stock options in order to make alimony payments. Rather, the court calculated appellant's 2016 gross income based in part on the gains he realized from stock options he had already exercised.

Finally, the Superior Court's inclusion of gains from the exercise of stock options in Mr. Crater's 2016 gross income is consistent with rulings in a number of other jurisdictions. *See, e.g.*, *Wooters*, 911 N.E.2d at 238 ("[C]ommon sense dictates that the income realized from the exercise of stock options should be treated as gross employment income[.]"); *Hiett v. Hiett*, 158 S.W.3d 720, 724 (Ark. Ct. App. 2004) ("It was not error for the trial court to include stock options that may be exercised by James in the future as a part of his net income for alimony purposes, given that *all* sources of income must be considered in determining alimony." (emphasis in original)); *In re Dolan*, 786 A.2d 820, 823 (N.H. 2001) (stating that exercised stock options "are also included within the phrase 'all

income from any source[,]'" contained in the relevant child support statute, and reasoning that income from the exercise of stock options is "analogous to a 'bonus'"); *Seither*, 779 So. 2d at 333-34 (stating that stock options "can be considered as income").

## II.

For all the foregoing reasons, "we cannot say that the findings [about Mr. Crater's 2016 income] upon which the judgment was based were plainly wrong and without support in substantial evidence." *Cefaratti v. Cefaratti*, 315 A.2d 142, 145 (D.C. 1974). The decision of the Superior Court, that the gains Mr. Crater realized in 2016 from the exercise of stock options must be included in calculating Mr. Crater's gross income for 2016, is

*Affirmed*.