*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 23-CO-0374

NATHAN E. WELCH, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(1996-FEL-002349)

(Hon. Peter A. Krauthamer, Motions Judge)

(Argued April 11, 2024                    Decided August 8, 2024)

*Anne Keith Walton,* for appellant.

*Ann M. Cotter*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb*, *John P. Mannarino,* and *Thomas Stutsman*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH and DEAHL, *Associate Judges*, and RUIZ, *Senior Judge*.

BECKWITH, *Associate Judge*: After serving twenty-six years in prison for a crime he committed when he was twenty-three years old, Nathan Welch moved for a reduction in his sentence under the Incarceration Reduction Amendment Act (IRAA), D.C. Code § 24-403.03. The trial court reduced Mr. Welch's sentence so

as to make him immediately eligible for a parole hearing, but declined to release him. Mr. Welch argues that the trial court abused its discretion by not ordering immediate release. We disagree and affirm.

## I.

In 1997, a jury convicted Mr. Welch of first-degree premeditated murder while armed, first-degree felony murder while armed, armed robbery, and related gun charges in connection with the robbery and murder of Michael Tyson. *Welch v. United States*, 807 A.2d 596, 597 (D.C. 2002). Mr. Welch appealed his convictions, and this court affirmed and remanded to the trial court to vacate certain merging convictions. *Id.* at 598. On remand, the court resentenced Mr. Welch to an indeterminate sentence of thirty-six years and eight months to life in prison.

In 2022, Mr. Welch filed a petition to reduce his sentence under IRAA. IRAA—enacted by the D.C. Council in recognition of juveniles' "reduced culpability" and their "capacity for rehabilitation and growth," Comm. on the Judiciary, Rep. on B21-0683, the "Comprehensive Youth Justice Amendment Act of 2016," at 4 (Oct. 5, 2016)—directs trial courts to "reduce a term of imprisonment" when the court finds that: (1) the movant was younger than twenty-five years old when he committed the underlying offense and has served at least fifteen years in prison, (2) the movant "is not a danger to the safety of any person or the community,"

and (3) "the interests of justice warrant a sentence modification," D.C. Code § 24-403.03(a). All parties agree Mr. Welch satisfies the first criterion.

In evaluating whether an eligible movant is entitled to release, IRAA instructs that the trial court "shall consider" ten enumerated factors and may consider "[a]ny other information the court deems relevant to its decision."[1]   D.C. Code

---

[1] The ten factors the trial court must consider are:

(1) The defendant's age at the time of the offense;

(2) The history and characteristics of the defendant;

(3) Whether the defendant has substantially complied with the rules of the institution to which the defendant has been confined, and whether the defendant has completed any educational, vocational, or other program, where available;

(4) Any report or recommendation received from the United States Attorney;

(5) Whether the defendant has demonstrated maturity, rehabilitation, and a fitness to reenter society sufficient to justify a sentence reduction;

(6) Any statement, provided orally or in writing, provided pursuant to § 23-1904 or 18 U.S.C. § 3771 by a victim of the offense for which the defendant is imprisoned, or by a family member of the victim if the victim is deceased;

(7) Any reports of physical, mental, or psychiatric examinations of the defendant conducted by licensed health care professionals;

(8) The defendant's family and community

§ 24-403.03(c).  Mr. Welch argued in his IRAA motion that the court should "release[] [him] immediately" because "[a]n analysis of those factors shows that [he] is no longer dangerous, and that the interests of justice warrant a sentence reduction." As to his dangerousness, Mr. Welch provided the court with a psychological evaluation finding that he "presents a 'Low' risk of violent reoffending."  He also emphasized his prison disciplinary record: although he struggled during his early years in prison, particularly during a fifty-day window in 2004 during which he was "targeted by officers," he had not committed a violent infraction in eighteen years. In a letter to the trial judge, Mr. Welch expressed his "great remorse" for "commit[ing] a horrendous crime that destroyed many lives."  Mr. Welch also

circumstances at the time of the offense, including any history of abuse, trauma, or involvement in the child welfare system;

(9) The extent of the defendant's role in the offense and whether and to what extent another person was involved in the offense;

(10) The diminished culpability of juveniles and persons under age 25, as compared to that of older adults, and the hallmark features of youth, including immaturity, impetuosity, and failure to appreciate risks and consequences, which counsel against sentencing them to lengthy terms in prison, despite the brutality or cold-blooded nature of any particular crime, and the defendant's personal circumstances that support an aging out of crime . . . .

D.C. Code § 24-403.03(c).

submitted letters from friends and supporters pledging their support and identified two employment opportunities and a place he could live upon his release.

The government opposed Mr. Welch's request for immediate release but did not oppose a reduction in Mr. Welch's sentence that could make him eligible for parole. The government pointed to three reasons for opposing immediate release: (1) Mr. Welch's "troubling disciplinary history," (2) his "lackluster release plan," and (3) the victim's family's opposition to early release.

The trial court held a hearing on the IRAA motion, at which Mr. Welch reiterated his remorse and Mr. Tyson's daughter gave a statement asking the trial judge "not [to] let this man get off free today." A supporter of Mr. Welch, Byron Meekins, also testified and offered to employ Mr. Welch at his landscaping company. After the hearing, the trial court asked Mr. Welch to provide a more detailed release plan. Through counsel, Mr. Welch provided an address where he could stay with his "adoptive siblings' grandmother." He also provided a detailed summary of his plans for the first seven days after his release, including going to the DMV, checking in with probation and setting up appointments with various groups assisting formerly incarcerated people with reentry.

A few months after submitting this release plan, Mr. Welch sent a second letter to the trial court. He opened the letter by stating that "[t]oday, I held onto a

close mentor's body as he took his last breaths and died in my arms." He then expressed his frustration with the court's delay in deciding his motion, describing himself as "rotting away in prison . . . unable to go back to the free world because my murder convictions are too much to bare [sic] for some." While he continued to describe his crimes as "something very awful that [he] wish[ed] he could take back," he also described the hearing as "a public hanging" given the judge's decision to allow the victim's family "to demean, insult, and attack" him and his sentence as an "outlandish banishment." Finally, he asked that the court give him "30 years time served and just allow the U.S. Parole Commission to handle the rest[,] [b]ecause it seems . . . like hell will freeze over before you ever grant any of my reduction of sentence requests."

The trial judge denied Mr. Welch's request for immediate release and instead granted "the limited reduction suggested by the government"—six years. The trial court discussed each of the relevant factors and determined that a number of them—including Mr. Welch's compliance with prison rules, his maturity level and fitness to reenter society, and the government's recommendation—counseled in favor of a sentence reduction but not immediate release. In assessing Mr. Welch's maturity, the court found particularly salient Mr. Welch's second letter to the court, which in the court's view demonstrated that "whatever remorse [Mr. Welch] expressed is gone and replaced by entitlement." The court also viewed Mr. Welch's release plan

as demonstrating a lack of maturity, describing it as "about as bare as could be regarding housing and employment" and dismissing his one-week plan as "overly ambitious" because it did "not realistically account for how long certain processes take, or the future beyond his first week of release." After quoting the victim-impact testimony in full, the trial court noted that it was not "deny[ing] [Mr. Welch's] immediate release out of deference to the victims," but it did "consider the impact Mr. Welch's crime had on [the victims'] lives as part of its evaluation of 'the interests of justice.'"

Ultimately, while the trial court credited the psychologist's conclusion that Mr. Welch had "successfully rehabilitated himself," it was "not satisfied that this rehabilitation [was] sufficient to merit relief under IRAA for the reasons stated elsewhere in this order." And though the trial court concluded that Mr. Welch was "not a danger to the community," immediate release was not in the "interests of justice," it said, "given Mr. Welch's weak release plan" and the "position of the victim's family." Instead of releasing Mr. Welch, the trial judge reduced Mr. Welch's sentence, making him immediately eligible for a parole hearing.

## II.

We review the denial (or partial denial) of an IRAA petition for abuse of discretion. *Bishop v. United States*, 310 A.3d 629, 641 (D.C. 2024). "In reviewing

for abuse of discretion, we 'must determine whether the decision maker failed to consider a relevant factor, whether [the decision maker] relied upon an improper factor, and whether the reasons given reasonably support the conclusion.'" *Id.* (alteration in original) (quoting *Crater v. Oliver*, 201 A.3d 582, 584 (D.C. 2019)). "The abuse-of-discretion standard includes review"—generally described as de novo review—"to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. United States*, 518 U.S. 81, 100 (1996) (stating that "an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction" and noting that "[l]ittle turns . . . on whether we label review of this particular question abuse of discretion or *de novo*"). Regardless, we will reverse only where "the impact of [the] error requires reversal"—in other words, where a party is prejudiced by the error. *Brooks v. United States*, 993 A.2d 1090, 1093 (D.C. 2010) (quoting *Johnson v. United States*, 398 A.2d 354, 367 (D.C. 1979)).

On appeal, Mr. Welch advances a number of arguments as to how the trial court abused its discretion in concluding that he was not entitled to immediate release in light of the evidence he submitted. We are unpersuaded that any of Mr. Welch's abuse-of-discretion arguments points to errors that actually prejudiced him because the trial court had a "firm factual foundation" for its ultimate conclusion—that Mr. Welch was not sufficiently rehabilitated and that the interests of justice did not support immediate release. *Brooks*, 993 A.2d at 1093. In coming to this conclusion,

the court relied on three principal aspects of the evidence—the victims' family's opposition to Mr. Welch's release, Mr. Welch's "weak" release plan, and the contents of his second letter to the court—all of which were appropriately considered.

While Mr. Welch argues that the trial court should not have given so much weight to the victim impact statements, the IRAA statute explicitly directs the court to take such statements into account.[2]  *See* D.C. Code § 24-403.03(c)(6).  And

---

[2] In arguing that the court should give "limited consideration" to the victim's family's wishes, Mr. Welch draws from the compassionate release context.  *See Bailey v. United States*, 251 A.3d 724, 731 (D.C. 2021) (per curiam) (holding that the trial court evaluating a compassionate release motion did not err by giving "limited consideration" to victim impact statements).  But we agree with the government that key differences between the IRAA and compassionate release statutory schemes allow a court to give greater weight to victim impact statements in the IRAA context.  The compassionate release statute instructs courts to consider delineated factors, but only insofar as those factors shed light upon the prisoner's dangerousness. *See id.*  IRAA, on the other hand, requires courts to consider victim impact statements, *see* D.C. Code § 24-403.03(c)(6), as part of a holistic inquiry aimed at determining not just whether a prisoner is dangerous, but whether the "interests of justice" favor relief, *see id.* § 24-403.03(a)(2).  Though we doubt that reference to victim opposition could be the *sole* support for a trial court's finding that release is not in the interests of justice, *see Bishop*, 310 A.3d at 634-35 ("IRAA 'establishes a sentence review procedure intended to . . . ensur[e] that all juvenile offenders serving lengthy prison terms have a realistic, meaningful opportunity to obtain release.'" (quoting *Williams v. United States*, 205 A.3d 837, 846 (D.C. 2019))), if victim impact statements "can inform [a] dangerousness assessment," *Bailey*, 251 A.3d at 731, they can certainly inform a court's assessment

although another factfinder might view Mr. Welch's reentry plan and letter less harshly than the trial court did here, the court "ha[d] the ability to choose from a range of permissible conclusions," and did so. *Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 513 (D.C. 2020) (quoting *Johnson*, 398 A.2d at 361); *see also id.* ("Discretion signifies choice." (quoting *Johnson*, 398 A.2d at 361)). In deciding not to release Mr. Welch immediately, the trial court made "[a]n informed choice" and did not abuse its discretion.[3] *Brooks*, 993 A.2d at 1093.

Mr. Welch's remaining arguments—which invoke legal errors—are unavailing. First, he argues that the trial court misapplied factor seven—which

of the interests of justice.

[3] Mr. Welch also argues that the trial judge erred in leaving the ultimate release decision to the United States Parole Commission. He cites our statement in *Williams v. United States* that "the formal judicial hearing envisioned by . . . IRAA provides defendants significant procedural guarantees, in contrast to the 'minimal' procedures that the Constitution requires in parole proceedings." 205 A.3d at 853. He also notes that the Parole Commission might give undue weight to the nature of his offense—which is not an IRAA factor—thus leading to a "de facto life sentence." While we do not disagree that the purpose of IRAA would be frustrated if leaving Mr. Welch's fate in the hands of the Parole Commission amounted to a "de facto life sentence" based on the nature of the defendant's crime, *see supra* n.2, Mr. Welch does not point us to any evidence suggesting this is the case, IRAA explicitly permits trial judges to "reduce" a defendant's sentence, D.C. Code § 24-403.03(a), and the trial court here provided detailed record-based reasoning for its conclusion that Mr. Welch's level of rehabilitation warranted a sentence reduction rather than immediate release.

requires the court to consider "[a]ny reports of physical, mental, or psychiatric examinations of the defendant conducted by licensed health care professionals," D.C. Code § 24-403.03(c)(10)—by failing to consider his physical health. But before the trial court, Mr. Welch did not argue that his physical health warranted release or submit any reports of his physical health. In his motion and at the hearing, Mr. Welch's sole argument regarding factor seven was that the court should consider the expert psychologist's conclusion that Mr. Welch was rehabilitated—which the court did. And the trial court did to some degree consider Mr. Welch's physical health—it noted the Bureau of Prison's categorization of Mr. Welch as "level 2-stable chronic care"—but determined that this did not impact the court's view on immediate release. While Mr. Welch argues that "[g]iven . . . that the trial court considered Mr. Welch's previously submitted medical records to be part of the IRAA record, it was required to consider Mr. Welch's entire medical record," we discern no error in the trial court's failure to consider documentation that was submitted as evidence in an unrelated matter (and that is not included in the record on appeal). The court applied factor seven as required by the IRAA statute.

Finally, Mr. Welch argues that the trial court made an error of law in failing to apply the correct standard in evaluating his IRAA motion—preponderance of the evidence—and instead held him to an unjustifiably high standard. "Absent any indication to the contrary, we presume that the trial judge knew the proper standard

of proof to apply and did in fact apply it." *In re C.T.*, 724 A.2d 590, 597 (D.C. 1999). Here, the trial court did not specify the evidentiary standard it applied. In arguing that the court applied a higher standard, Mr. Welch cites the trial court's assessment that he "ha[d] not reached 'the highest level of rehabilitation and maturity'" and its description of his release plan as "weak." The government agrees that preponderance of the evidence is the correct standard for granting an IRAA motion, but argues that the trial court properly applied that standard.

Neither of these statements by the trial court indicates that it applied a higher standard than preponderance of the evidence—both statements were made in the context of evaluating the evidence submitted by Mr. Welch as to specific factors, not assessments of the weight of the evidence as a whole. And in analyzing the relevant factors to determine whether to reduce Mr. Welch's sentence, the trial court properly weighed the evidence favoring immediate release against evidence counseling against immediate release. We see no error.

## III.

Because the trial court did not abuse its discretion or otherwise err in ordering the limited reduction in Mr. Welch's sentence, we affirm.

*So ordered.*