*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-CO-0031

JOHN DOE, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(1997-FEL-004112)

(Hon. Kelly A. Higashi, Motions Judge)

(Argued September 24, 2024　　　　　　　　　Decided April 10, 2025)

*Mikel-Meredith Weidman*, Public Defender Service, with whom *Samia Fam* and *Jaclyn S. Frankfurt*, Public Defender Service, were on the briefs, for appellant.

*Mark Hobel*, Assistant United States Attorney, with whom *Matthew M. Graves*, then United States Attorney, and *Chrisellen R. Kolb*, *John P. Mannarino*, and *Kyle Fitzpatrick*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, SHANKER, *Associate Judge*, and EPSTEIN,* *Senior Judge, Superior Court of the District of Columbia*.

---

* Sitting by designation pursuant to D.C. Code § 11-707(a). Judge Epstein was an Associate Judge of the Superior Court at the time of argument. His status changed to Senior Judge on February 24, 2025.

Opinion for the court by *Chief Judge* BLACKBURNE-RIGSBY.
Opinion by Senior Judge EPSTEIN, concurring in the judgment, at page 39.

BLACKBURNE-RIGSBY, *Chief Judge*:  John Doe[1] appeals from the trial court's partial denial of his motion to reduce his sentence under the Incarceration Reduction Amendment Act (IRAA).  Mr. Doe was convicted in 1998 of several homicide-related charges and sentenced to an aggregate term of seventy-five years—later corrected to fifty-five years—to life in prison.  Mr. Doe was sixteen years old when he committed the offenses.  In June 2023, Mr. Doe filed an application to reduce his sentence under the IRAA, seeking his immediate release.  The government did not oppose his request. The trial court determined that Mr. Doe was not dangerous and that the interests of justice warranted a sentence reduction, but it rejected his request for immediate release.  Instead, the trial court reduced his sentence by twenty-two years, making him eligible for release eighteen months later after accounting for good time credits.

On appeal, Mr. Doe argues that the trial court erred in denying his request for immediate release because, after finding that Mr. Doe is not dangerous and that the interests of justice warrant a sentence reduction, the trial court improperly engaged in a "second step" of resentencing him pursuant to a legal framework that is

---

[1] The court allowed Mr. Doe to proceed under a pseudonym to protect confidential and sensitive information about him.

unrelated to the IRAA. Mr. Doe also argues that the trial court erred when it denied his request for immediate release based on the nature and seriousness of his offenses and the impact on the victims. We hold that the trial court erred in denying Mr. Doe's request for immediate release when it (1) applied an unrelated statute, D.C. Code § 3-101, and an inapplicable legal framework to resentence Mr. Doe, and (2) relied on the seriousness of Mr. Doe's underlying offenses as a standalone factor. Nonetheless, we affirm the trial court's order because the errors did not cause substantial prejudice to Mr. Doe and therefore were harmless.

## I.    Factual Background and Procedural History

In 1997, when Mr. Doe was sixteen years old, he fatally shot and killed his twenty-two-year-old ex-girlfriend and her nineteen-year-old male companion. He committed these acts in the middle of the night at his ex-girlfriend's apartment while her four children were present. Mr. Doe was tried as an adult and convicted of first-degree murder while armed for the murder of the male companion, second-degree murder while armed for the murder of both victims, and two counts of possession of a firearm during a crime of violence. Mr. Doe was acquitted of first-degree murder of his ex-girlfriend. The trial court sentenced Mr. Doe to an aggregate sentence of seventy-five years to life. This court affirmed Mr. Doe's convictions in an unpublished memorandum judgment and opinion, but remanded to the trial court

with instructions to vacate on merger grounds one of Mr. Doe's two convictions for murdering the male companion.

In 2023, Mr. Doe filed an IRAA motion seeking a sentence reduction that would effectuate his immediate release from prison on a two-year period of probation. The government did not oppose the requested sentence modification and conceded that Mr. Doe had carried his burden under the IRAA, but it requested a five-year period of probation. On November 21, 2023 and December 12, 2023, the trial court held hearings on Mr. Doe's IRAA motion, during which it heard from the parties and several members of the ex-girlfriend's family. At the conclusion of the latter hearing, the trial court ruled that Mr. Doe had carried his burden for relief under the IRAA, finding that Mr. Doe had proven that he is no longer a danger to the community and that the interests of justice require a sentence reduction. After hearing again from the parties and members of the ex-girlfriend's family, the trial court proceeded to what it referred to as the "second step" under the IRAA, in which it resentenced Mr. Doe. The trial court determined that the interests of justice required a sentence of more than twenty-six years and suspended all but thirty-three years of Mr. Doe's original sentence, to be followed by a five-year term of

probation.[2]  The trial court estimated that, after accounting for good time credits, Mr. Doe would be eligible for release in June 2025.[3]

On February 13, 2024, and as detailed *infra*, the trial court issued a written order in which it further elaborated on its decision.  Mr. Doe filed a timely notice of appeal.  We granted Mr. Doe's request to expedite his appeal in light of his relatively imminent release date.

## II.    Discussion

### A.    Standard of Review

This court "review[s] the denial of an IRAA motion for abuse of discretion, but consider[s] questions of statutory construction de novo."  *Bishop v. United States*, 310 A.3d 629, 641 (D.C. 2024) (citation omitted) (first citing *Williams v. United States*, 205 A.3d 837, 848 (D.C. 2019); and then citing *Eaglin v. District of Columbia*, 123 A.3d 953, 955 (D.C. 2015)).  "In reviewing for abuse of discretion,

---

[2] As required by this court's 2002 ruling on direct appeal, the trial court also vacated the merged second-degree murder conviction for which Mr. Doe had received a twenty-year sentence, thereby reducing Mr. Doe's aggregate prison term from seventy-five years to fifty-five years to life.

[3] The government asserted in its brief that Mr. Doe would be eligible for home release on December 28, 2024 and that his new projected release date is June 28, 2025.

we 'must determine whether the decision maker failed to consider a relevant factor, whether [the decision maker] relied upon an improper factor, and whether the reasons given reasonably support the conclusion.'" *Id.* (alteration in original) (quoting *Crater v. Oliver*, 201 A.3d 582, 584 (D.C. 2019)). "'The abuse-of-discretion standard includes review'—generally described as de novo review—'to determine that the discretion was not guided by erroneous legal conclusions.'" *Welch v. United States*, 319 A.3d 971, 975 (D.C. 2024) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

"Even where we find error," however, "we may find that the fact of error in the trial court's determination caused no significant prejudice and hold, therefore, that reversal is not required." *Stone v. Alexander*, 6 A.3d 847, 851 (D.C. 2010) (quoting *Johnson v. United States*, 398 A.2d 354, 366 (D.C. 1979)). "In sum, the appellate court makes two distinct classes of inquiries when reviewing a trial court's exercise of discretion. It must determine, first, whether the exercise of discretion was in error and, if so, whether the impact of that error requires reversal." *Id.* (quoting *Johnson*, 398 A.2d at 367).

## B.      Statutory Framework

In response to "constitutional imperatives,"[4] the D.C. Council enacted the IRAA in 2016 to "ensur[e] that all juvenile offenders serving lengthy prison terms have a realistic, meaningful opportunity to obtain release based on their diminished culpability and their maturation and rehabilitation." *Williams*, 205 A.3d at 846. Both the IRAA and the Supreme Court's Eighth Amendment juvenile jurisprudence are based on:

> [A] body of scientific evidence demonstrat[ing] that the frontal lobes of the brain, which control executive functions like planning, working memory, and impulse control . . . [,] may not be fully developed until the mid-twenties.  As a result, adolescents have a more difficult time grasping long-term consequences and are more likely to have impaired judgment[.]  Juveniles and young adults may exhibit a lack of maturity and an underdeveloped sense of responsibility, heightened susceptib[ility] to negative influences and outside pressures, including peer pressure, and a more transitory, less fixed personality than older adults.  Youth raised in unstable, violence-ridden circumstances are particularly vulnerable.  Young offenders therefore possess reduced culpability for their crimes and an increased capacity for rehabilitation and

---

[4] *See Graham v. Florida*, 560 U.S. 48, 75 (2010) (ruling that a State must provide a juvenile sentenced to life without parole for a non-homicide conviction with a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation"); *Miller v. Alabama*, 567 U.S. 460, 479 (2012) (holding "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders"). *See generally Montgomery v. Louisiana*, 577 U.S. 190 (2016).

growth.

*Bishop*, 310 A.3d at 635 (alterations in original) (citations and internal quotation marks omitted). In short, the Council recognized that eligible incarcerated persons "are deserving of an opportunity to seek early release from their sentences because they were less developmentally culpable when they committed their crimes." *Long v. United States*, 312 A.3d 1247, 1260 (D.C. 2024).

Pursuant to the IRAA, a trial court "shall reduce a term of imprisonment imposed upon a defendant," D.C. Code § 24-403.03(a), if the movant meets two sets of criteria: eligibility criteria and merits criteria. "A movant is eligible for a sentence reduction under IRAA . . . if he or she (1) committed the relevant offense before the age of twenty-five, (2) 'was sentenced pursuant to § 24-403 or § 24-403.01, or was committed pursuant to § 24-903,' and (3) 'has served at least 15 years in prison.'"[5] *Long,* 312 A.3d at 1262 (quoting D.C. Code §24-403.03(a)). "If a movant satisfies these eligibility criteria, a court moves to the merits criteria set forth in subsection (a)(2)." *Id.* Pursuant to the merits inquiry, a court must reduce an eligible movant's term of imprisonment if it "finds, after considering the factors set forth in subsection

---

[5] The IRAA thus applies to individuals that were sentenced pursuant to the indeterminate sentencing scheme (which applies to felonies committed before August 5, 2000) or the determinate sentencing scheme (which replaced the indeterminate sentencing scheme and applies to felonies committed on or after August 5, 2000), *see Williams*, 205 A.3d at 847 n.49, and to youth offenders committed pursuant to the Youth Act.

(c) of this section, that the defendant is not a danger to the safety of any person or the community and that the interests of justice warrant a sentence modification." D.C. Code § 24-403.03(a)(2); *Long*, 312 A.3d at 1262.

Subsection (c), in turn, provides a set of eleven enumerated factors that the court "shall consider" when conducting the merits inquiry:

> (1) The defendant's age at the time of the offense;
> (2) The history and characteristics of the defendant;
> (3) Whether the defendant has substantially complied with the rules of the institution to which the defendant has been confined, and whether the defendant has completed any educational, vocational, or other program, where available;
> (4) Any report or recommendation received from the United States Attorney;
> (5) Whether the defendant has demonstrated maturity, rehabilitation, and a fitness to reenter society sufficient to justify a sentence reduction;
> (6) Any statement, provided orally or in writing, provided pursuant to § 23-1904 or 18 U.S.C. § 3771 by a victim of the offense for which the defendant is imprisoned, or by a family member of the victim if the victim is deceased;
> (7) Any reports of physical, mental, or psychiatric examinations of the defendant conducted by licensed health care professionals;
> (8) The defendant's family and community circumstances at the time of the offense, including any history of abuse, trauma, or involvement in the child welfare system;
> (9) The extent of the defendant's role in the offense and whether and to what extent another person was involved in the offense;
> (10) The diminished culpability of juveniles and persons under age 25, as compared to that of older adults, and the hallmark features of youth, including immaturity, impetuosity, and failure to appreciate risks and

consequences, which counsel against sentencing them to lengthy terms in prison, despite the brutality or cold-blooded nature of any particular crime, and the defendant's personal circumstances that support an aging out of crime; and

(11) Any other information the court deems relevant to its decision.

D.C. Code § 24-403.03(c). "The burden of proof is on the movant." *Bishop*, 310 A.3d at 636 (citing *Williams*, 205 A.3d at 850).[6]

The Council has amended the IRAA twice since it first took effect in 2017. *Compare* D.C. Code § 24-403.03 (2017) *with* D.C. Code § 24-403.03 (2019) *and* D.C. Code § 24-403.03 (2021). Of particular importance to this case is the Council's decision, as part of the 2019 IRAA amendments, to remove "[t]he nature of the offense" as a consideration under factor two. *Compare* D.C. Code § 24-403.03(c)(2) (2017) (requiring a court to consider "[t]he nature of the offense and the history and characteristics of the defendant" under factor two) *with* D.C. Code § 24-403.03(a)(2) (2019) (requiring a court to consider only "[t]he history and characteristics of the defendant" under factor two). The Committee on the Judiciary and Public Safety explained that the Council removed the "nature of the offense" from the list of statutory factors in "response to the over-reliance on the underlying offense by the

---

[6] The preponderance-of-the-evidence standard is the default rule and generally applies unless a statute specifies a different standard. *See Bailey v. United States*, 251 A.3d 724, 729 (D.C. 2021) (per curiam) (applying this standard under the compassionate release statute). The IRAA does not specify a different standard.

[United States Attorney's Office] as an argument for denying the petitions of potentially rehabilitated defendants. Individuals eligible to petition for relief under the IRAA have *all* served long sentences for *exclusively* serious offenses." Committee Report, Report on Bill No. 23-0127 before the Committee on the Judiciary and Public Safety, Council of the District of Columbia at 19 (Nov. 23, 2020) (2020 Committee Report). Although the nature of the offense is no longer included as "standalone language" in the statute, the Committee emphasized that courts still "consider[] the facts and circumstances surrounding the underlying offense through [their] review of the various factors and evidence." *Id.* at 18-19.

### C. Trial Court Order

In its written order, the trial court found that Mr. Doe met the threshold requirements for eligibility under the IRAA because he was sixteen years old at the time of his offenses, he was sentenced pursuant to Section 24-403, and he had served over twenty-six years in prison. The trial court then applied the merits criteria to Mr. Doe.

Pursuant to factor one, the court noted that Mr. Doe was sixteen years old when he committed the offenses. In describing the history and characteristics of Mr. Doe pursuant to factor two, the trial court credited Mr. Doe's assertion that he experienced a childhood "destabilized by addiction, incarceration, domestic

violence, poverty, and community upheaval." The trial court stated that Mr. Doe's parents "failed to properly supervise him due to their drug use and incarceration" and noted that he was "physically abused by his mother and witnessed numerous acts of violence in his neighborhood." The trial court proceeded to assess Mr. Doe's behavior following his commission of the offenses, finding that he "has matured and developed more peaceful, prosocial traits" and "has had numerous jobs throughout his incarceration, has taken behavioral improvement programs, and become a mentor to his fellow inmates and young offenders."

In applying factor three—the defendant's compliance with rules and participation in programming while incarcerated—the trial court found that Mr. Doe incurred six disciplinary infractions for fighting or possessing a weapon and noted that half of the infractions occurred during the past ten years, including one that occurred after Mr. Doe filed his IRAA motion. In discussing the infractions, however, the trial court described certain mitigating factors, including Mr. Doe's assertions that he remained in a lower security section of the institution and has been treated as a low-risk inmate even after the infractions. Further, the trial court detailed Mr. Doe's concerted efforts to be "a productive inmate throughout his period of incarceration," including holding various jobs; serving as a "peer assistant" for offenders on suicide watch; studying for and obtaining a certification to serve as a health aide for individuals with disabilities; mentoring children through a gang

intervention program; completing numerous programs "to better himself and the community," including programs focused on nonviolent conflict resolution and cognitive behavioral skills; and making substantial progress towards obtaining a GED. The trial court ultimately summarized its findings under factor three as follows:

> On this factor, the Court takes into consideration both the very positive record of Mr. [Doe]'s continued coursework and outstanding performance evaluations contrasted with the negative record of three disciplinary infractions during the past ten years, including one for fighting during 2023, while this motion has been pending. However, the Court also notes and credits the proffers made by [Mr. Doe]'s counsel that put into context those infractions.

In discussing the government's position pursuant to factor four, the trial court stated that the government provided a "sparse" written response to Mr. Doe's motion in which it did not oppose Mr. Doe's request and conceded that he had met his burden under the IRAA. The trial court determined that factor five—the defendant's demonstrated maturity, rehabilitation, and fitness to reenter society—weighs in favor of IRAA relief. The trial court found that Mr. Doe had expressed sincere remorse for his crimes, including during his testimony at the IRAA hearing in which he "stated approximately three times that 'it's not prison that scares me' and that forgiveness from [his ex-girlfriend]'s family 'is all' he wants." Further, the trial court found that:

> Mr. [Doe]'s voluminous record of self-improvement during his incarceration indicates that he possesses the maturity necessary to reenter society. Mr. [Doe] has also presented specific plans for housing and employment upon his release and has a supportive network of family and friends. Moreover, the positive statements from [Department of Corrections] and [Bureau of Prisons] staff, and the trust placed in [Mr. Doe] in his various job positions, speak to [Mr. Doe]'s path towards rehabilitation.

The trial court found that factor six—victim impact statements—weighs against a finding that granting Mr. Doe's motion would be in the interests of justice. The trial court recounted views expressed by ten family members of the female decedent, who "generally expressed that they did not believe it was just that [Mr. Doe] may be released given that [the female decedent] will never get a second chance at life." The family members described, among other things, hearing "terrifying cries of helplessness" and seeing "so much blood" on the night of the murder, and they attested to having endured significant trauma as a result of Mr. Doe's actions. For example, the decedent's mother stated that she "never thought in a million years" that she would have to bury one of her daughters and that a "huge piece of [her] heart is forever gone." Her stepfather, meanwhile, expressed that the trauma his family has endured is "their life sentence."

When assessing factor eight, which encompasses the defendant's family and community circumstances at the time of the offenses, the trial court detailed the

extensive conflict, drug addiction, and violence to which Mr. Doe was exposed throughout his childhood.[7]   After "recogniz[ing] that Mr. [Doe] experienced emotional trauma from a young age due to his parent's [sic] divorce, his lack of a stable home environment, and his early exposure to domestic violence and abuse" and "acknowledg[ing] that the violent, unsafe neighborhood Mr. [Doe] grew up in likely had a great impact on him and his development, which in turn contributed to" his underlying offenses, the trial court concluded that "these circumstances weigh in favor of granting IRAA relief."

The trial court found that factor nine—the extent of the defendant's role in the offense and the extent to which another person may have been involved—"weighs against a finding that granting Mr. [Doe] IRAA relief would be in the interests of justice" because Mr. Doe was the only individual found to have been involved in or responsible for the offenses.  Pursuant to factor ten, the trial court considered the mitigating qualities of Mr. Doe's youth, which the trial court noted "will always favor the granting of an IRAA motion for reduction of sentence."  Factor ten requires the court to consider "[t]he diminished culpability of juveniles and persons under age 25, as compared to that of older adults, and the hallmark features of youth,

---

[7] The trial court "d[id] not give great weight" to factor seven—reports of physical, mental, or psychiatric examinations of the defendant—because neither Mr. Doe nor the government provided any relevant reports.

including immaturity, impetuosity, and failure to appreciate risks and consequences, which counsel against sentencing them to lengthy terms in prison, despite the brutality or cold-blooded nature of any particular crime, and the defendant's personal circumstances that support an aging out of crime." D.C. Code § 24-403.03(c)(10). When describing factor ten, the trial court cited an earlier version of the IRAA that did not require consideration of "the defendant's personal circumstances that support an aging out of crime." *Compare* D.C. Code § 24-403.03(c)(10) (2019) *with* D.C. Code § 24-403.03(c)(10) (2021). Mr. Doe does not argue that the trial court erred in its assessment of factor ten.

Based on its assessment of the enumerated factors, the trial court concluded that Mr. Doe had established that he is not a danger to society and that the interests of justice favor relief under the IRAA. The trial court then proceeded to a separate section of the order titled "Resentencing." The trial court began this section by citing to Section 3-101, which created the District of Columbia Sentencing Commission and set forth five factors that the Sentencing Commission must consider when promulgating voluntary sentencing guidelines. *See* D.C. Code § 3-101(b)(1). According to the trial court, it "generally considers" these factors "[w]hen considering sentencing." Among these factors is the "[s]eriousness of the offense." *Id.* § 3-101(b)(1)(A). The trial court also referred to the "broad discretion" that it exercises "in the context of a post-trial motion to reduce a sentence" and noted that,

in this case, the trial court accounted for "the extraordinary and lasting impact of the crimes on the numerous victims who compellingly conveyed those impacts in detail."

After setting forth this resentencing standard, the trial court found "that the nature and seriousness of Mr. [Doe]'s offenses were among the very most serious and severe of criminal offenses." The trial court detailed the murders Mr. Doe committed and described the "severe trauma" that Mr. Doe caused when he killed a "devoted mother, daughter, and sister," stating that "[t]he impact on the victims in this case was among the most serious and severe in light of the number of victims who suffered among the most painful and life-long deprivations and emotional impacts." The trial court found, however, that several facts weighed in favor of substantially reducing Mr. Doe's sentence, including that he "has demonstrated he has matured through the behavior he has exhibited while incarcerated, including his overall compliance with the rules of the institutions where he has been housed, his employment history, and his formal and informal mentorship to other inmates and at-risk youth." The trial court therefore ruled that "[w]hen weighing the seriousness of Mr. [Doe]'s offenses of the murders of two innocent victims and the extraordinary and lasting impact on numerous family members of the decedents who are also victims" against, among other things, "Mr. [Doe]'s rehabilitation . . . [,] it is appropriate to reimpose Mr. [Doe]'s original sentence of 55 years to life, with the

execution of the sentence suspended as to all but 33 years, to be followed by five years of supervised probation." This twenty-two-year reduction amounts to over seventy-five percent of the twenty-nine years that were remaining on Mr. Doe's sentence.

### D.    Analysis

Mr. Doe argues that the trial court erred in multiple respects when it denied his request for immediate release after finding that he is not dangerous and that the interests of justice support relief under the IRAA. First, Mr. Doe argues that the trial court erred when, after finding that he had met his burden under the statute, it engaged in a separate resentencing analysis in which it relied on two sources that are unrelated to the IRAA: (1) Section 3-101, and (2) the broad discretion that trial courts exercise when ruling on a motion to correct or reduce a sentence under Rule 35 of the Superior Court Rules of Criminal Procedure. According to Mr. Doe, the IRAA does not permit a trial court to engage in a "second step" analysis divorced from the IRAA framework when fashioning relief because the IRAA is a resentencing statute that specifies the criteria under which the court must determine whether and how to grant relief. Second, according to Mr. Doe, the trial court erred in basing its denial of his request for immediate release on the seriousness of his underlying offenses and the harm he caused to the victims because the IRAA does not permit the trial

court to deny relief for retributive reasons. Third, Mr. Doe asserts that, even if the IRAA permitted trial judges to deny relief based on these factors in exceptional circumstances, Mr. Doe's case is not such a circumstance.

The government contends that the trial court followed the proper procedural framework for resentencing under the IRAA.[8] The government relies on a provision in the IRAA that directs the trial court, when reducing a movant's sentence, to resentence the defendant "under the sentencing regime that originally governed

---

[8] The government also argues, as an initial matter, that Mr. Doe's challenge to the trial court's two-step framework is subject to plain error review because he did not object during the IRAA hearing when the trial court referred to resentencing as the "second step." We disagree. Although it is true that Mr. Doe's counsel did not object during the hearing when the trial court announced that it was proceeding to the "second step" of resentencing, Mr. Doe makes clear in his initial brief that his challenge pertains to the trial court's "failure to follow the directives of [the IRAA] . . . and its reliance instead on an inapplicable legal framework and broad discretion untethered from [the] IRAA." At the hearing, however, the trial court did not refer to any statutes outside of the IRAA framework or to any broad discretion that it was purporting to exercise. In denying Mr. Doe's request for immediate release, the trial court stated only that "justice requires for the murder of two innocent young people . . . an aggregate sentence of more than 26 years." It was not until the trial court issued its written order—more than two months after the hearing—that the trial court explained the basis for its resentencing decision, including by citing to and applying Section 3-101. Accordingly, Mr. Doe was unable to object to the trial court's resentencing analysis during the hearing. Indeed, Mr. Doe's counsel attempted during the hearing to elicit "some more information about how [the trial court] is arriving at that sentence," but the trial court stated that it would "elaborate more in [its] written order" and that it was not appropriate "to engage in a debate" during the hearing. We therefore conclude that Mr. Doe has preserved his challenge to the trial court's resentencing analysis.

[their] sentence." *Williams*, 205 A.3d at 848 (citing D.C. Code § 24-403.03(e)). The government asserts that the indeterminate sentencing regime, which governed Mr. Doe's initial sentence, does not require the court to consider any specific factors and vests the trial court with broad discretion in issuing a sentence. Thus, according to the government, the trial court did not abuse its discretion when it turned to the Section 3-101 factors, including the seriousness of the offense, for guidance. Further, in defending the trial court's reliance on the seriousness of Mr. Doe's crimes and the harm he caused to the victims, the government emphasizes that the IRAA specifically requires the trial court to consider victim impact statements and notes that this court recognized in *Bishop* that the interests-of-justice inquiry "can encompass the nature of the underlying crime." *Bishop*, 310 A.3d at 649.

We hold that the trial court erred in denying Mr. Doe's request for immediate release when it (1) applied a separate statute and an inapplicable legal framework to resentence Mr. Doe, and (2) relied on the seriousness of Mr. Doe's underlying offenses as a standalone factor. Nonetheless, we affirm the trial court's order

because the errors did not cause substantial prejudice to Mr. Doe and therefore were harmless.

### 1.    One-Step Process

We conclude that the trial court first erred when it treated resentencing under the IRAA as a second step untethered from the enumerated IRAA factors.  The IRAA does not create a two-step process whereby the trial court first decides whether to reduce the sentence based on an application of the IRAA factors and then determines the extent of the reduction based on a separate statutory or other resentencing framework.  Instead, the IRAA provides that the trial court "shall" reduce[9] an eligible movant's sentence if it "finds, *after considering the factors set forth in subsection (c) of this section*, that the defendant is not a danger to the safety of any person or the community and that the interests of justice warrant a sentence modification."  D.C. Code § 24-403.03(a)(2) (emphasis added).  The statute thus does not contemplate a separate inquiry, based on a different legal framework, that governs the extent of the sentence reduction.  Instead, the statute directs the trial

---

[9] As Mr. Doe conceded at oral argument, the IRAA does not require the trial court to immediately release a successful movant.  Although the IRAA requires the trial court to *reduce* a successful movant's "term of imprisonment," D.C. Code § 24-403.03(a), the extent of the reduction is within the discretion of the trial court. *See* 2020 Committee Report at 14 (explaining that, "by the statute's plain language," IRAA "[a]pplications are for *sentence modification* . . . not necessarily *immediate release*" (emphasis added)).

court to focus its analysis solely on the eleven enumerated factors. Accordingly, we conclude that these two issues—(1) whether to reduce the sentence and (2) the extent of the sentence reduction—are two sides of the same coin, and the trial court must consider exactly the same factors in deciding both questions.

The trial court failed to adhere to this framework in its written order. To be sure, the trial court engaged in a careful review of each of the enumerated IRAA factors when assessing dangerousness and the interests of justice, finding that some factors weighed in favor of relief, some weighed against relief, and others weighed somewhere in between. Ultimately, this analysis led the court to conclude that Mr. Doe was entitled to relief under the IRAA because he "has established that he is not currently a danger to society" and "the interests of justice favor relief." After dutifully applying the IRAA factors and concluding that Mr. Doe is not dangerous and that the interests of justice warrant a sentence reduction, however, the trial court proceeded to depart from the IRAA statute by resentencing Mr. Doe pursuant to a legal framework that is distinct from the IRAA. Specifically, the trial court: (1) listed and applied factors set forth under Section 3-101—a completely separate statute that governs the Sentencing Commission's promulgation of voluntary sentencing guidelines—and asserted that the trial court "generally considers" these factors "[w]hen considering sentencing"; and (2) asserted that a trial court "exercises broad discretion when exercising its sentencing power in the context of a post-trial

motion to reduce a sentence," citing to *McBride v. United States*, 255 A.3d 1022, 1025 (D.C. 2021), which concerned the denial of a Rule 35 motion and thus bears no connection to the IRAA. *See McBride*, 255 A.3d at 1027-28 (holding appeal of trial court's denial of appellant's motion for a sentence reduction under Rule 35(b) of the Superior Court Rules of Criminal Procedure was moot because appellant had already been released from custody). In sum, the trial court treated resentencing as a distinct step divorced from the IRAA factors and, in doing so, applied an unrelated statute and an inapplicable legal framework. By issuing a resentence that was not based on an application of the IRAA factors, the trial court erred. *See Crater*, 201 A.3d at 584.

The government contends that the trial court applied the proper resentencing framework because subsection (e) of the IRAA directs the trial court to resentence Mr. Doe pursuant to the sentencing regime that applied at the time of his sentence. *See* D.C. Code § 24-403.03(e). Because Mr. Doe was originally sentenced pursuant to the indeterminate sentencing scheme and trial courts were afforded broad discretion when sentencing defendants under that scheme, according to the government, the trial court did not err in turning to Section 3-101 for guidance and exercising broad discretion in resentencing Mr. Doe. This argument misses the mark. The government is correct that, pursuant to subsection (e) of the IRAA, the trial court was required to resentence Mr. Doe pursuant to the indeterminate

sentencing scheme. *Id.*; *see Williams*, 205 A.3d at 848. The legislative history, however, makes abundantly clear that subsection (e) is not an invitation for trial courts to eschew the IRAA factors and engage in a separate resentencing analysis. Instead, subsection (e) serves the narrow purpose of ensuring that any sentence reduction issued pursuant to the IRAA does not violate the Ex Post Facto Clause of the U.S. Constitution.

The engrossed original version of the IRAA bill that the Council considered prior to enacting the IRAA into law included under subsection (e) a provision that would have required any successful IRAA movant to serve a period of supervised release. Comprehensive Youth Justice Amendment Act of 2016, D.C. Bill. No. 21-0683, Engrossed Original, at 22 (Oct. 11, 2016). The Council unanimously voted, however, to adopt an amendment that removed the supervised release requirement and replaced it with a directive to the trial court to resentence any successful movant pursuant to the sentencing scheme that governed the movant's original sentence. The following rationale was provided for the amendment:

> This amendment is necessary to allow the court to resentence a person under this bill pursuant to the sentencing statute that applies to their case. The Ex Post Facto Clause of the U.S. Constitution requires that a person be sentenced according to the laws that were in effect at the time the person committed the offense for which they were convicted. Thus, a person who was convicted of a crime that was committed before August 5,

2000, must have an indeterminate (parole) sentence imposed, and a person who was convicted of a crime on or after August 5, 2000, must have a determinate sentence imposed. The Engrossed Version of the bill used the term "supervised release," which is similar to parole but is the technical term in the determinate system for the supervision period that follows imprisonment on a felony conviction. *By using the term "supervised release," the Engrossed Version inadvertently referenced only one type of sentence and would not have allowed a judge to resentence pursuant to the other two types of sentences that are eligible for resentencing pursuant to this section.*

Comprehensive Youth Justice Amendment Act of 2016, D.C. Bill No. 21-0683, Amendment #1, (Nov. 1, 2016) (emphasis added).

Based on this legislative history, we conclude that the Council did not intend for the cross-references to the three sentencing schemes under subsection (e) to serve as an invitation for trial courts to depart from the IRAA framework and treat resentencing as a completely separate inquiry guided by other statutes. Instead, as this amendment makes clear, the Council added a cross-reference to the three sentencing schemes simply to ensure that sentencing modifications issued pursuant to the IRAA would comply with the Ex Post Facto Clause. Accordingly, we hold that the trial court erred when it resentenced Mr. Doe pursuant to a separate statute and an inapplicable legal framework.

## 2.     Seriousness of the Underlying Offenses

After erroneously treating resentencing as a second step removed from the IRAA framework, the trial court committed a separate but related error when it relied on the seriousness of Mr. Doe's underlying offenses as a standalone factor in denying his request for immediate release.  Both the statutory and legislative history of the IRAA, as well as long-standing principles of statutory interpretation, confirm that a trial court is prohibited from considering the seriousness of the defendant's underlying offenses in isolation and outside of the framework of the enumerated factors.

As discussed, the first iteration of the IRAA that was enacted into law mandated that a trial court consider "[t]he nature of the offense" under factor two of the merits criteria.  D.C. Code § 24-403.03(c)(2) (2017).  As explained by the Committee, the Council later amended the IRAA and removed "[t]he nature of the offense" from factor two "in response to the over-reliance on the underlying offense by the [United States Attorney's Office] as an argument for denying the petitions of potentially rehabilitated defendants.  Individuals eligible to petition for relief under the IRAA have *all* served long sentences for *exclusively* serious offenses, as the law requires defendants to have served at least 15 years to be eligible to even petition."  2020 Committee Report at 19.  We view these statements as a clear indication that

the Council removed this language from the list of standalone factors because the Council determined that the inclusion of this language was preventing the IRAA from achieving its intended purpose of providing all defendants who committed crimes before the age of twenty-five and are serving "lengthy prison terms" with "a realistic, meaningful opportunity to obtain release based on their diminished culpability and their maturation and rehabilitation," *Williams*, 205 A.3d at 846, notwithstanding the severity of those crimes.[10] By its very terms, the IRAA applies strictly to individuals that have committed the most serious, heinous crimes. Permitting a court to consider the seriousness of those crimes as a standalone factor

---

[10] The concurrence suggests that the Council believed the IRAA was achieving its intended purpose when the "nature of the offense" language was still included under factor two because the Committee stated in a 2018 report that it was "quite pleased with Superior Court judges' interpretations of the new law." *Post* at 42-43 n.2 (quoting Committee Report, Report on Bill No. 22-0255 before the Committee on the Judiciary and Public Safety, Council of the District of Columbia at 8 (Nov. 28, 2018) (2018 Committee Report)). The Council may have been generally pleased with how the law was being interpreted, but it strains credulity to assume that the Council would remove this language from the list of standalone factors if it was not concerned about how this language was impacting—and would continue to impact—the disposition of IRAA applications. Indeed, in the same paragraph of the 2018 Committee Report that the concurrence quotes from, the Committee stated that there were "several opportunities for clarification and enhancement" of the IRAA and that it saw a need to "revisit[] the factors used by the court." 2018 Committee Report at 8.

is both redundant and retributive in a manner that is at odds with the IRAA's manifest purpose.

For these reasons, we disagree with the concurrence about the salience of "just punishment," or punishment that "fit[s] the crime," in the context of resentencing under the IRAA. *Post* at 50. By its very terms, the IRAA provides a framework for a significant reduction of a sentence that, according to the initial sentencing judge, fit the serious, heinous nature of the crime. A crime that was serious and heinous at the time of sentencing will, of course, remain serious and heinous at the time the defendant applies for IRAA relief years later. Accordingly, when an IRAA movant makes a sufficient showing with respect to the enumerated factors, the IRAA's structure and purpose require the trial court to reduce the movant's sentence even though the nature of the crime would otherwise warrant a longer aggregate sentence.

We acknowledge that the text of the IRAA provides, under the catch-all provision in factor eleven, that a court may consider "[a]ny other information the court deems relevant to its decision." D.C. Code § 24-403.03(c)(11). Long-standing principles of statutory interpretation, however, lead us to conclude that a trial court is prohibited from considering the seriousness of a defendant's underlying offense in isolation pursuant to the catch-all provision. "When [the legislature] acts to amend a statute, we presume it intends its amendment to have real and substantial

effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). To that end, the Council's decision to remove "the nature of the offense" from the list of standalone factors does not signal that courts should continue to consider the nature of the offense under the catch-all provision. Instead, it signals that courts should not consider the nature of the offense as a standalone factor *at all*. The only way to give "real and substantial effect," *id.*, to the Council's decision to remove the "nature of the offense" from the list of standalone factors is to prohibit courts from relying on it as a standalone factor. Further, this court adheres to the long-standing principle that "words 'cannot prevail over strong contrary indications in the legislative history.'" *Grayson v. AT&T Corp.*, 15 A.3d 219, 238 (D.C. 2011) (en banc) (quoting *Citizens Ass'n of Georgetown v. Zoning Comm'n*, 392 A.2d 1027, 1033 (D.C. 1978) (en banc)). Accordingly, we must heed the Council's intent in amending the statute.[11]

We emphasize the perverse outcomes that could result for defendants whom the Council clearly had in mind when it amended the IRAA if we permitted trial courts to consider the seriousness of the underlying offense in isolation pursuant to

---

[11] The concurrence suggests that a trial court may, pursuant to the catch-all provision, consider the seriousness of the underlying offense insofar as it relates to other information it deems relevant to the interests of justice. *Post* at 45. This case does not present facts that require us to address this issue, but we emphasize that trial courts may not consider the seriousness of the offense in isolation pursuant to the catch-all factor.

the catch-all provision. Such an interpretation could, for example, empower a trial court to deny immediate release to a defendant based on the violent nature of the offense despite the judge finding that none of the enumerated factors weigh against immediate release. In a different case, a trial court could be empowered to conclude that the violent nature of the offense tips the scales in favor of an outright denial of IRAA relief when the judge found that certain enumerated factors weighed in favor of relief and other enumerated factors weighed against relief.

We also recognize that multiple enumerated factors directly relate to the nature and seriousness of the underlying offense, including victim impact statements and the extent of the defendant's role in the offense. D.C. Code §§ 24-403.03 (c)(6), (9). The issue is thus not *whether* a court may consider the nature and seriousness of the offense, but rather *how* a court may do so. May a trial court rely on the nature and seriousness of the offense in isolation, pursuant to the catch-all provision? Or is the court confined to considering the nature and seriousness of the offense through the lens of the relevant enumerated factors? Given that the IRAA applies exclusively to defendants that have served at least fifteen years in prison, an affirmative answer to the former would empower a trial court to find that the nature of the offense weighs against release in nearly every IRAA case. An affirmative answer to the latter, on the other hand, limits a court's consideration of the nature of the offense to specific aspects of the offense, such as (1) the impact the offense had on any victims

that submitted victim impact statements, and (2) the defendant's individualized role in committing the offense.[12]

The Committee's report provides strong evidence that the Council intended for courts to consider the nature of the offense only insofar as it relates to the enumerated factors. After explaining that IRAA relief is necessarily limited to individuals that have committed serious offenses, the Committee stated that "the [c]ourt considers the facts and circumstances surrounding the underlying offense *through its review of the various factors and evidence.* . . . The Committee is clear that *the facts and circumstances of the underlying offense are interwoven throughout the statute.*" 2020 Committee Report at 18-19 (emphasis added). Indeed, multiple

---

[12] Accordingly, we disagree with the concurrence's assertion that prohibiting a trial court from considering the seriousness of the offense outside of the lens of these specific factors "does not contribute to a solution of any problem with over-reliance on the seriousness of the offense." *Post* at 43. There may be cases, for example, in which factor six does not weigh against the defendant because the trial court does not receive any victim impact statements. *See* D.C. Code § 24-403.03(c)(6). Similarly, there may be cases in which factor nine does not weigh against the defendant because another individual had a more significant role in the offense. *See id.* § 24-403.03(c)(9). In such cases, our construction of the statute plainly prevents over-reliance on the seriousness of the offense. Further, even in cases in which these specific factors weigh against the defendant, the extent to which they weigh against the defendant could vary significantly based on the facts at issue. The same could not be said if the seriousness of the offense was considered in isolation pursuant to the catch-all provision because, as discussed, "[i]ndividuals eligible to petition for relief under the IRAA have *all* served long sentences for *exclusively* serious offenses." 2020 Committee Report at 19.

enumerated factors directly relate to the nature and seriousness of the underlying offense, including victim impact statements and the extent of the defendant's role in the offense. *See* D.C. Code §§ 24-403.03 (c)(6), (9). Thus, in applying the enumerated IRAA factors, courts necessarily assess considerations that relate to the nature and seriousness of the underlying offense. In light of this legislative and statutory history, courts are limited to considering the nature and seriousness of the underlying offense through their application of the relevant specific factors, rather than as a separate, standalone factor pursuant to the catch-all provision.[13]

Here, we conclude that the trial court erred by relying on the seriousness of Mr. Doe's offenses as a standalone factor. After applying the IRAA factors and *concluding that the interests of justice supported relief under the statute*, the trial

---

[13] Both parties discuss *Bishop*, 310 A.3d 629, to support their position regarding the trial court's consideration of the seriousness of Mr. Doe's offenses. In *Bishop*, this court expressly declined to address the appellant's argument that the trial court abused its discretion when it placed substantial weight on the nature of his offenses as part of the interests-of-justice inquiry. *See* 310 A.3d at 648-49. Unlike in this case, the court in *Bishop* did not need to reach that issue because it remanded the case on other grounds. *See id.* at 649. Nonetheless, after declining to reach the issue, the court suggested in dicta "that the interests of justice can encompass the nature of the underlying crime" and that trial courts should "bear in mind that the D.C. Council removed language . . . instructing courts to specifically consider the 'nature of the offense.'" *Id.* These suggestions in *Bishop*, which were dicta, are not inconsistent with our holding here. As we hold here, trial courts can consider the nature of the offense as part of the interests-of-justice inquiry through their application of the relevant specific factors, but they may not consider the nature of the offense as a standalone factor.

court: (1) cited to an unrelated statute, Section 3-101, which includes "[s]eriousness of the offense" as one of five standalone factors, *id.* § 3-101(b)(1)(A); (2) considered and described in detail the "nature and seriousness of [Mr. Doe]'s offenses"; and (3) denied Mr. Doe's request for immediate release in part due to "the seriousness of [his] offenses of the murders of two innocent victims." This makes clear that the trial court considered the seriousness of Mr. Doe's offenses as a standalone factor, in contravention of and untethered from the interests-of-justice analysis embodied in the enumerated IRAA factors. *See id.* § 24-403.03(c). Because the trial court "relied upon an improper factor" in denying Mr. Doe's request for immediate release, *Crater*, 201 A.3d at 584, we hold that the trial court erred.

Notwithstanding the trial court's error in relying on the seriousness of Mr. Doe's underlying offenses as a standalone factor, we reject Mr. Doe's arguments that a trial court may only consider the movant's rehabilitation and dangerousness when applying the merits criteria. As discussed, the IRAA mandates that a trial court reduce an eligible movant's sentence if it "finds, after considering the factors set forth in subsection (c) of this section, that the defendant is not a danger to the safety of any person or the community *and that the interests of justice warrant a sentence modification.*" D.C. Code § 24-403.03(a)(2) (emphasis added). Indeed, multiple factors—including factor four (the position of the United States Attorney's

Office), factor six (victim impact statements),[14] and factor nine (the extent of the defendant's role in the offense)—extend beyond rehabilitation and non-dangerousness. *Id.* §§ 24-403.03(c)(4), (6), (9). A lack of dangerousness is only half of the equation; the trial court must also determine, through its review of the enumerated factors, whether the interests of justice warrant a sentence reduction.[15] *Id.* § 24-403.03(a)(2).

---

[14] We also reject Mr. Doe's argument that a trial court may rely on victim impact statements "only insofar as they shed light on the petitioner's rehabilitation" because courts are prohibited from considering "retributive principles that have no place in the IRAA framework." Mr. Doe relies on *Bailey*, 251 A.3d at 731-34, in which we ruled in the compassionate release context that certain factors cross-referenced under the operative statute—including victim impact statements—are relevant to the analysis only insofar as they relate to the defendant's present or future dangerousness. We have rejected this argument in the IRAA context because the compassionate release statute focuses solely on dangerousness, whereas the IRAA "requires courts to consider victim impact statements as part of a holistic inquiry aimed at determining not just whether a prisoner is dangerous, but whether the 'interests of justice' favor relief." *Welch*, 319 A.3d at 975 n.2 (citation omitted). Mr. Doe's argument that the IRAA forbids any consideration of retributive principles is therefore foreclosed by our ruling in *Welch*.

[15] For these reasons, we also reject Mr. Doe's argument that the IRAA incorporates a legislative determination that a youthful offender who demonstrates his rehabilitation must be released after serving fifteen years in prison. That argument effectively reads the interests-of-justice prong out of the statute. If the Council concluded that rehabilitation and non-dangerousness alone were enough to justify a defendant's immediate release after serving more than fifteen years in prison, the IRAA would not require a trial court to consider factors that reach beyond rehabilitation and dangerousness.

We emphasize that the IRAA's directive to the trial court to determine whether "the interests of justice warrant a sentence modification," *id.*, is not an invitation for the trial court to engage in an unconstrained interests-of-justice inquiry untethered from the enumerated factors. The IRAA directs the trial court to make findings regarding dangerousness and the interests of justice "*after considering the factors set forth in subsection (c).*" *Id.* (emphasis added). We interpret this language to limit a trial court's consideration of dangerousness and the interests of justice to its application of the eleven enumerated factors. Certain of these factors, such as factor five, clearly relate to dangerousness. *See id.* § 24-403.03(c)(5) ("Whether the defendant has demonstrated maturity, rehabilitation, and a fitness to reenter society sufficient to justify a sentence reduction."). Other factors, such as victim impact statements, clearly relate to the interests of justice. *See id.* § 24-403.03(c)(6) ("Any statement . . . by a victim of the offense for which the defendant is imprisoned, or by a family member of the victim if the victim is deceased."). Many of the factors, including the two just mentioned, could relate to both dangerousness and the interests of justice depending on the facts at issue. The trial court thus exercises its discretion to determine whether the movant has met their burden with respect to dangerousness and the interests of justice by considering and weighing the enumerated factors.

We recognize that we and other courts have interpreted certain interests-of-justice standards under other legal frameworks to confer broad discretion on the court in making the interests-of-justice determination. *See, e.g.*, *Green v. United States*, 164 A.3d 86, 98 (D.C. 2017) (Ruiz, J., dissenting) (discussing broad discretion under Rule 33 of the Superior Court Rules of Criminal Procedure to grant a new trial in the interests of justice); *Coté v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (discussing broad discretion under 28 U.S.C. §§ 1404, 1406 to transfer a case in the interests of justice); *In re D.B.*, 133 A.3d 561, 562 (D.C. 2016) (discussing this court's broad authority to remand a case for further proceedings in the interests of justice under D.C. Code § 17-306). Those statutes and rules, however, are distinct from the interests-of-justice standard under the IRAA because they do not prescribe specific factors that a court must consider when making the interests-of-justice determination. *See* Super. Ct. Crim. R. 33(a) (2017); 28 U.S.C. § 1404 (1982); 28 U.S.C. § 1406 (1982); D.C. Code § 17-306 (2016). The IRAA, on the other hand, provides carefully crafted factors that serve as the basis for both the dangerousness and interests-of-justice analyses. D.C. Code § 24-403.03(c). Accordingly, the broad discretion that courts can exercise when analyzing the interests of justice under other legal frameworks is inapplicable to the IRAA and, in turn, does not provide any support for the trial court's reliance on the seriousness of the offense as a standalone factor in this case. In sum, the differences between the interests-of-justice standard

under the IRAA and the interests-of-justice standards under these other legal frameworks confirm that a trial court's discretion in assessing the interests of justice under the IRAA is limited to its consideration of the enumerated factors.

Because the IRAA provides specific considerations that the trial court must consider when analyzing the interests of justice, we need not issue a specific definition of the "interests of justice" under the IRAA. Whether it is in the interests of justice to grant an IRAA motion will depend on the specific facts presented to the trial court. Providing a rigid definition of the interests of justice—or a rigid rule that mandates how a trial court must weigh the enumerated factors—would thus be inconsistent with the statutory framework. Put simply, a trial court must exercise its discretion to determine whether the interests of justice warrant a sentence reduction by applying and weighing the considerations set forth in the enumerated factors. *See, e.g.*, *Welch*, 319 A.3d at 975 (holding trial court did not abuse its discretion in denying appellant's request for immediate release under the IRAA and instead reducing his sentence such that he immediately became eligible for a parole hearing when it discussed each of the relevant factors and determined that immediate release was not in the interests of justice in light of appellant's weak release plan and the position of the victim's family).

### 3. The Trial Court's Errors Were Harmless

Notwithstanding the trial court's errors, we affirm the trial court's judgment because the errors did not cause "significant prejudice," *Johnson*, 398 A.2d at 366, and therefore were harmless. Based on this record, there is no indication that the trial court would have reached a different result had it only considered the nature and seriousness of Mr. Doe's offenses through its application of the relevant IRAA factors. In its analysis, the trial court relied in large part on the enumerated factors in the statute and considered the victim impact statements, concluding that "[t]he violent killing of a young but devoted mother, daughter, and sister caused severe trauma to numerous people who feel that they themselves have suffered their own form of a life sentence. The impact on the victims in this case was among the most serious and severe in light of the number of victims who suffered among the most painful and life-long deprivations and emotional impacts." Reliance on victim impact statements is plainly permissible under the IRAA. *See* D.C. Code § 24-403.03(c)(6). Further, the trial court determined that another IRAA factor— the extent of the defendant's role in the offense—"weighs against a finding that granting Mr. [Doe] IRAA relief would be in the interests of justice." The trial court thus reduced Mr. Doe's sentence by over twenty years—and, in doing so, made him eligible to be released eighteen months after the ruling—even though multiple IRAA factors weighed against relief. Mr. Doe was therefore not substantially prejudiced

by the trial court's errors in treating resentencing as a second step removed from the IRAA framework and applying the seriousness of Mr. Doe's offenses as a standalone factor.

The issues involved in this case are not merely a matter of form over substance. Although the trial court's errors did not cause substantial prejudice to Mr. Doe in light of multiple enumerated factors weighing against relief, similar errors in a different case would, in our view, have substantially prejudiced the defendant if multiple enumerated factors did not weigh against relief as they did here. Trial courts must ensure that they only consider the seriousness of the underlying offense insofar as it relates to the first ten enumerated factors.

## IV. Conclusion

For these reasons, we affirm the judgment of the Superior Court.

*So ordered.*

EPSTEIN, *Senior Judge*, concurring: I agree with the majority that we should affirm the trial court's decision to grant most but not all of the sentence reduction sought by appellant John Doe under the Incarceration Reduction Amendment Act (IRAA). I write separately to address two issues.

First, I do not agree with the majority that the trial court treated the seriousness of Mr. Doe's crimes as a standalone factor or that its analysis was untethered from the factors enumerated in D.C. Code § 24-403.03(c).  I agree with the majority, *ante* at 30, that the issue is "not *whether* a court may consider the nature and seriousness of the offense, but rather *how* a court may do so."  I also agree with the majority, *ante* at 25, 26-27, that trial courts should not consider the seriousness of the defendant's underlying crimes in isolation or treat it as an automatic or absolute bar to relief under the IRAA.  However, in my view, the trial court faithfully conducted the required "holistic inquiry aimed at determining . . . the interests of justice favor relief."  *See Welch v. United States*, 319 A.3d 971, 975 n.2 (D.C. 2024) (internal quotation marks omitted).  Giving substantial weight to Mr. Doe's maturity and rehabilitation and to the diminished culpability of young offenders, the trial court considered the seriousness of Mr. Doe's crimes in the context of the enumerated IRAA factors.  Mr. Doe does not demonstrate that the trial court gave undue weight to the seriousness of his crimes when it granted a twenty-two-year sentence reduction, which was 75% of the reduction he requested and which made him eligible for release in a little over a year.  Indeed, the majority concludes that any error by the trial court was harmless.

Second, I elaborate on the reasons why, as the majority states, *ante* at 34 n.15, the IRAA permits consideration of retributive principles under the interests-of-

justice prong. Instead of the term "retribution," I prefer "just punishment," which is the term used in the current sentencing statute (D.C. Code § 24-403.01(a)(2)). In my view, the interest in just punishment has a legitimate but circumscribed role in the interests-of-justice analysis under the IRAA. The open-ended interests-of-justice standard allows the trial court to consider, in determining what sentence serves the interests of justice, whether a sentence imposes just punishment. Whether a reduced sentence serves the interests of justice depends on whether it serves the interest in just punishment—the interest in sentences imposing punishment that fits both the crime and the defendant. *See generally Holt v. United States*, 565 A.2d 970, 980 (D.C. 1989). It is self-evident that the interests of justice encompass the justness of the punishment necessarily imposed by any lengthy prison sentence—whether the original sentence or a resentence. However, trial courts may not treat the interest in just punishment as an automatic bar to relief under the IRAA, and they should instead treat it as only one part of the interests-of-justice analysis.

## I.    No Abuse of Discretion

As the majority states, we review orders denying or granting IRAA motions under an abuse-of-discretion standard. *Bishop v. United States*, 310 A.3d 629, 641 (D.C. 2024); *see Walden v. United States*, 366 A.2d 1075, 1076-77 (D.C. 1976) (holding that rulings by trial courts on sentence reduction motions are entitled to

"broad deference" and "the scope of appellate review of decisions on sentence reduction motions is very limited").[1]  In my view, the trial court's thoughtful and balanced ruling easily passes muster under this standard.  The trial court did not treat the seriousness of Mr. Doe's crimes as a standalone factor, and its interests-of-justice analysis was tethered to the factors enumerated in D.C. Code § 24-403.03(c).

As the majority states, *ante* at 30, the issue is "not *whether* a court may consider the nature and seriousness of the offense, but rather *how* a court may do so."  I of course also agree with the majority, *ante* at 28-29, that we must give real and substantial effect to the 2019 amendment that deleted from factor two a reference to "the nature of the offense."  We should do so by giving the amendment exactly the effect that the Council stated it intended the amendment to have:  to prevent over-reliance on the nature of the offense.  The legislative history of the 2020 amendments explains that "[p]rior standalone language in the list of factors—the 'nature and circumstances of the offense'—was unanimously removed by the Council in earlier

---

[1]  *Walden* upheld the denial of the defendant's Rule 35 motion to reduce his sentence.  The majority states, *ante* at 23, that Rule 35 motions bear no connection to the IRAA.  Rule 35 and the IRAA serve different purposes, but both the rule and the statute grant trial courts discretion to reduce a sentence.  The issue for the trial court in *Walden* was whether evidence of the defendant's rehabilitation after he was originally sentenced warranted a sentence reduction, 366 A.2d at 1076, and that is also an issue under the IRAA.

legislation in response to the over-reliance on the underlying offense by the [United States Attorney's Office] as an argument for denying the petitions of potentially rehabilitated defendants." *See* Committee Report, Report on Bill No. 23-0127 before the Committee on the Judiciary and Public Safety, Council of the District of Columbia at 19 (Nov. 23, 2020).[2]

According to the majority, *ante* at 32, "courts are limited to considering the nature and seriousness of the underlying offense through their application of the relevant specific factors, rather than as a separate, standalone factor." Consistent with the legislative history of the 2019 amendment, I would put it differently: courts are limited to considering the nature and seriousness of the underlying offense as one of many factors relevant to the interests of justice (or dangerousness); and they cannot give it undue weight, including making it a separate, standalone bar to relief.

---

[2] It is worth noting that the legislative history makes clear that the Council thought that, unlike prosecutors, Superior Court judges were correctly interpreting the law. In its 2018 report discussing the proposed amendments to the IRAA including the amendment to factor two, the Committee on the Judiciary and Public Safety stated that it "is quite pleased with Superior Court judges' interpretations of the new law." *See* Committee Report, Report on Bill No. 22-0255 before the Committee on the Judiciary and Public Safety, Council of the District of Columbia at 8 (Nov. 28, 2018). Unlike the majority, *ante* at 27 n.10, I do not think that it "strains credulity" to accept at face value the Committee's statements in these two reports. That said, I agree that elimination of the reference in factor two to the nature of the offense should be interpreted to prohibit over-reliance by judges as well as prosecutors on the nature of the offense.

"[I]ndividuals eligible to petition for relief under the IRAA have *all* served long sentences for *exclusively* serious offenses," *Bishop,* 310 A.3d at 649 (internal quotation marks and citation to legislative history omitted), so trial courts cannot deny relief simply because an IRAA-eligible defendant committed a serious crime.

The majority's requirement that trial courts may consider the seriousness of the underlying offense only through the application or lens of enumerated factors, *ante* at 30 & 32, does not contribute to a solution of any problem with over-reliance on the seriousness of the offense. The majority correctly states, *ante* at 31 n.12, that enumerated factors related to the seriousness of the crime may not weigh against defendants in some cases, but the majority offers no reason to think that trial courts in these cases would nevertheless give undue weight to the seriousness of the crime if they still considered it. Over-reliance on the seriousness of the offense is equally possible (and equally mistaken) whether or not the trial court views seriousness through the application of an enumerated factor. The majority recognizes that trial courts that view the seriousness of the crime through the lens of an enumerated factor do not necessarily put too much weight on this factor, and any risk of over-reliance is no greater if they view it as a standalone factor. Mr. Doe's case confirms the lack of a fit between the problem and the majority's proposed solution: the majority

concludes that the trial court both considered the seriousness of Mr. Doe's crimes as a standalone factor and granted appropriate relief.[3]

For its formulation of the standard, the majority relies, *ante* at 31, on two statements in a 2020 report by the Committee on the Judiciary and Public Safety about the 2019 amendment. All that these statements mean to me is that the Council expected courts to conduct a holistic analysis and to consider the nature of the offense not in isolation but in the context of all the relevant factors. I think the majority is reading too much into these statements by making them a technical, formalistic prescription about how courts should analyze the nature of the offense.

Unlike the majority, *see ante* at 39, I am inclined to think that the differences between the alternate standards discussed by the majority involve form more than substance. The majority agrees, *ante* at 30, that trial courts can consider the seriousness of the offense as part of their consideration of multiple factors

---

[3] I agree with the majority, *ante* at 29-30, that considering the nature and seriousness of the offense in isolation and out of context could lead to "perverse outcomes" that would contravene the legislative intent. I am not sure whether these perverse outcomes include the very general scenarios described by the majority because, as the majority aptly states, *ante* at 38, "[w]hether it is in the interests of justice to grant an IRAA motion will depend on the specific facts presented to the trial court." For example, even under the majority's proposed methodology, because factors six and nine require a court to consider victim impact statements and the defendant's role in the offense, a court may have discretion to deny immediate release or even any relief based on the impact of a violent crime and the defendant's role in it even though other enumerated factors weigh in favor of immediate release.

enumerated in § 24-403.03(c), including the impact of the crimes under factor six and the defendant's role under factor nine.  In addition, factor eleven permits the court to consider any information it deems relevant to the interests of justice.  As a result, courts can consider, as the majority puts it, *ante* at 33, "the nature and seriousness of the underlying offense through their application of the relevant specific factors, rather than as a separate, standalone factor."

In my view, the trial court fully complied with these requirements of the IRAA in Mr. Doe's case.  The trial court considered the seriousness of Mr. Doe's crimes in the context of factors enumerated in § 24-403.03(c) and consistent with the IRAA's framework.  The trial court factored the seriousness of Mr. Doe's crimes (including the harm inflicted on his victims and his sole responsibility for the crimes) into a holistic analysis of all of the IRAA factors.  *See Welch*, 319 A.3d at 975 n.2. The trial court did not treat the seriousness of his offenses as a standalone factor; rather, it interwove these facts and circumstances with all other information relevant to the interests of justice.[4]  Far from treating the indisputable seriousness of Mr.

---

[4] I agree with the majority that the trial court erred, and erred harmlessly, in citing D.C. Code § 3-101(b)(1), which includes the seriousness of the offense among the factors that the District of Columbia Sentencing Commission should consider in formulating voluntary sentencing guidelines.  The trial court could appropriately have cited D.C. Code § 24-403.01, which D.C. Code § 24-403.03(e)(1) cites and which includes in subsection (a)(1) the seriousness of the offense as a factor relevant to sentencing.  *See* note 7 below.

Doe's crimes as an automatic bar to relief, the trial court granted substantial relief, reducing his sentence by twenty-two years—about seventy-five percent of the reduction he sought. The trial court did not expressly state, each and every time that it referred to the seriousness of Mr. Doe's offenses, that it was considering their seriousness in the context of all relevant factors, but as we stated in *Bishop*, 310 A.3d at 648, "a trial court is not obligated to recount every detail of its preceding analysis" or "restate the weight ascribed to every factor" in its interests-of-justice analysis.

The fact that the trial took into account the seriousness of Mr. Doe's crimes does not mean that the trial court gave it more weight than it deserved, and indeed the majority concludes that any error by the trial court was harmless. The trial court's obligation to conduct a holistic assessment that takes into account all relevant factors does not mean that any one factor cannot affect the outcome. A factor weighing in the defendant's favor may justify a larger reduction, and conversely, a factor weighing against the defendant may result in a smaller reduction or even no reduction at all. Neither a downward nor an upward effect of a particular factor necessarily means that the trial court gave dispositive or excessive weight to the factor. A factor can affect the final sentencing decision when the trial court gives the factor only the weight that it deserves. Precluding the trial court from relying on a factor to affect its decision would effectively preclude the court from considering the factor at all.

## II.     Just Punishment and the Interests of Justice

I agree with the majority, *ante* at 34 n.15, that the IRAA permits consideration of retributive principles. In the context of sentencing, "retribution" is synonymous with "punishment,"[5] and I prefer the latter term to the former. Whether a sentence is in the interests of justice depends in part on whether it provides for just punishment, and that is true whether the sentence is the original sentence or a resentence.

Under the IRAA, any IRAA-eligible defendant who has demonstrated that he is not a danger to the community must also demonstrate that the reduced sentence he requests serves the interests of justice. As courts have recognized, the interests-of-justice standard is inherently broad, open-ended, and amorphous.[6] As the

---

[5] Our court has used the two terms essentially interchangeably. *See, e.g.*, *McNeil v. United States*, 933 A.2d 354, 364 (D.C. 2007). Dictionaries define "retribution" to mean "punishment." *See, e.g.*, *Merriam-Webster Dictionary*, at 631 (rev. ed. 2022); *Webster's New World College Dictionary*, at 1251 (5th ed. 2014); *American Heritage Dictionary*, at 1500 (5th ed. 2016).

[6] *See Lewis v. Wash. Hosp. Ctr.*, 77 A.3d 378, 381 (D.C. 2013) (characterizing as "broad" a statute allowing courts to waive a notice requirement in the interests of justice); *United States v. Emmett*, 749 F.3d 817, 819-20 (9th Cir. 2014) (characterizing as a "broad legal standard" the "interest of justice" standard for granting early termination of supervised release); *Old Ben Coal Co. v. Dir.*, 292 F.3d 533, 547 (7th Cir. 2002) ("amorphous"); *In re Qualteq, Inc.*, No. 11-12572 KJC, 2012 WL 527669, at *6 (Bankr. D. Del. Feb. 16, 2012) ("broad and flexible" (internal quotation marks omitted)); *United States v. Nunez*, No. 14-cr-00300-JST-

majority states, *ante* at 36, courts have interpreted this standard in other contexts to confer broad discretion on trial courts. Both the interests-of-justice standard and the discretion conferred by the IRAA are broad enough to encompass the uncontroversial principle that a sentence or resentence that is in the interests of justice should provide for just punishment.[7]

---

1, 2015 U.S. Dist. LEXIS 51779, at *1 (N.D. Cal. April 17, 2015) ("intentionally open-ended"); *In re Tronox Inc.*, No. 09-10156 (MEW), 2024 Bankr. LEXIS 1819, at *58 (Bankr. S.D.N.Y. Aug. 5, 2024) ("open-ended"); *Starr Int'l Co. v. United States*, 139 F. Supp. 3d 214, 229 (D.D.C. 2015) ("somewhat amorphous and open-ended"), *vacated on reconsideration on other grounds*, No. 14-CV-01593 (CRC), 2016 WL 410989 (D.D.C. Feb. 2, 2016); 17 J. Moore, *Moore's Federal Practice*, § 111.34, at 111-65 (3d ed. 2011) ("amorphous").

[7] Although there are differences between an original sentencing and a resentencing under the IRAA, they are more alike than different. All of the factors enumerated in § 24-403.03(c) are relevant to both sentencing and resentencing, and whether the trial court is sentencing or resentencing, it can consider what sentence serves the interests of justice. For example, even before the IRAA was enacted, sentencing judges could and did take into account that a minor "may be less culpable than an adult would have been in similar circumstance because of his youth and the mitigating factors attendant to youth, such as susceptibility to peer pressure." *James v. United States*, 59 A.3d 1233, 1239 (D.C. 2013). Likewise, trial courts crafting initial sentences do not treat the seriousness of the offense as necessarily dispositive; that is why trial courts do not automatically impose the maximum sentence permitted by law, or a sentence at the top of the range under the voluntary sentencing guidelines, just because the defendant committed a serious crime. Indeed, D.C. Code § 24-403.03(e)(1) provides, "Any defendant whose sentence is reduced under this section shall be resentenced pursuant to § 24-403, § 24-403.01, or § 24-903, as applicable," and § 24-403.01(a)(2) in turn requires any sentence to provide for "just punishment." The plain language of § 24-403.03(e)(1) therefore permits a trial court resentencing a defendant under the IRAA to consider whether the new sentence provides for just punishment. As the majority states, *ante* at 24-25, the Council

Included in any reasonable understanding of the "interests of justice," as the concept relates to sentencing, is the principle that a sentence should provide for just punishment that fits the crime as well as the defendant. "The principle of proportionality—that is, that the punishment should fit the crime—is one of the most basic tenets of our system of jurisprudence." *Holt*, 565 A.2d at 980. That is why the current sentencing statute requires any sentence to provide for "just punishment." *See* D.C. Code § 24-403.01(a)(2). It seems to me incontrovertible that the interests of justice include the interest in having the punishment imposed by any prison sentence fit the crime. If the punishment imposed by a resentence under the IRAA is not just because it is either excessive or inadequate, the resentence cannot be in the interests of justice. If the Council intended to preclude courts from considering just punishment in adjudicating IRAA motions, it could hardly have chosen a standard more poorly designed to accomplish that goal than the broad and open-ended interests-of-justice standard.

---

included in § 24-403.03(e)(1) the reference to these three sentencing statutes after it recognized that language in an earlier bill mistakenly referenced only one type of sentence under the determinate sentencing statute and thereby conflicted with the *ex post facto* clause for defendants who got indeterminate sentences. However, nothing in the language or legislative history of § 24-403.03(e)(1) suggests that a judge resentencing a defendant under the IRAA should ignore any consideration that the applicable sentencing statute allowed the original sentencing judge to consider.

Two factors listed in § 24-403.03(c) support the conclusion that just punishment is relevant to the interests of justice in (re)sentencing. Factor six makes the impact of crimes on victims relevant to the interests of justice, *see Welch*, 319 A.3d at 395 n.2, and victim impacts are relevant to sentencing because this factor relates to the seriousness of the crime and therefore to the punishment that fits it. *See In re M.N.T.,* 776 A.2d 1201, 1204 (D.C. 2001) (discussing "the close correlation between harm caused to victims of a crime and the seriousness of the offense for sentencing purposes"). In addition, factor ten instructs judges to consider the "diminished culpability" of young offenders, so the statute requires consideration of a defendant's culpability, even though diminished. Culpability is relevant in sentencing to only one thing: punishment.

The structure of the IRAA further supports this interpretation because precluding trial courts from considering just punishment would effectively read the interests-of-justice prong out of the IRAA, which the majority agrees, *ante* at 34 n.16, we cannot do. Inherent in any lengthy prison sentence is a significant punitive component, and it is hard to see what interest of justice other than the interest in just punishment or adequate deterrence justifies continuing to incarcerate a defendant who is not a danger to the community and who has already served at least 15 years. As reflected in the federal sentencing statute, the four generally accepted purposes of sentencing are "just punishment, deterrence, protection of the public, and

rehabilitation." *See Dean v. United States*, 581 U.S. 62, 67 (2017) (discussing 18 U.S.C. § 3553(a)). The interests in rehabilitation and protection of the public obviously cannot justify continued incarceration of an IRAA-eligible defendant who established that he is rehabilitated and not a danger to the community. That leaves just punishment and deterrence as the only justifications for continued incarceration. It is therefore reasonable to infer that the Council included a separate interests-of-justice prong in the IRAA so that courts could take into account interests of justice like just punishment and adequate deterrence.[8]

Finally, I emphasize that trial courts may not treat the interest in just punishment for serious crimes as an insuperable, standalone bar to relief. As I discussed above in Section I, the IRAA prohibits over-reliance on the underlying offense as a reason for denying petitions of non-dangerous defendants, and so too does it prohibit over-reliance on the interest in just punishment in the interests-of-

---

[8] I do not address in detail the interest in adequate deterrence because the trial court did not rely on deterrence in analyzing the interests of justice. D.C. Code § 24-403.01(a)(2) requires a sentence to "afford[] adequate deterrence to potential criminal conduct of the offender and others." I note that deterrence may be less effective (but not completely ineffective) for youths because "the same characteristics that render juveniles less culpable than adults—their immaturity, recklessness, and impetuosity—make them less likely to consider potential punishment." *See Miller v. Alabama*, 567 U.S. 460, 472 (2012) (internal quotation marks omitted). Courts should not treat the interest in deterrence as an automatic bar to relief under the IRAA, for the same reasons they should not reflexively rely on the interest in just punishment for serious crimes to justify denial of relief.

justice analysis. Trial courts must determine whether the 15+ years that IRAA eligible defendants have already served for their serious crimes, or another sentence shorter than their original sentence, provides for just punishment and therefore achieves the interests of justice.